**F I L E D**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL ALBERT CERVINI,

    Defendant - Appellant.

No. 03-6144

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. Nos. 02-CV-596-L and 99-CR-206-L)**

Randal A. Sengel, Assistant United States Attorney (and Robert G. McCampbell, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Brian C. Southwell, Minneapolis, Minnesota, for Defendant - Appellant.

Before **KELLY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Michael Cervini appeals from the district court's denial of his motion to vacate, 28 U.S.C. § 2255. Our jurisdiction arises under 28 U.S.C. § 2253(a) and, for the reasons stated below, we affirm.

Background

In December 1999, Defendant was charged in a two-count indictment with (1) shipping child pornography in interstate commerce, 18 U.S.C. § 2252A(a)(1); and (2) possession of child pornography that was transported in interstate commerce by means of a computer, 18 U.S.C. § 2252A(a)(5)(B).  Aplt. App. at C2.  Pursuant to a conditional plea agreement Defendant pled guilty in district court to the second count of the indictment and was sentenced to twenty-seven months imprisonment and three years supervised release.[1]  Id.  The first count was dismissed.  On appeal, he argued that the district court erred in denying his motion to suppress and his request for an evidentiary hearing on that motion. United States v. Cervini, No. 00-6331, 2001 WL 863559 (10th Cir. July 31, 2001).  We affirmed on both grounds.

Following Defendant's appeal, the Supreme Court issued its decision in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), which invalidated § 2256(8)(B) and (D) of the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2251 et. seq.  These provisions purported to include in the definition of

---

[1] Despite the fact that Defendant had served his prison sentence at the time he filed the instant petition, he was still on supervised release and therefore remained "in custody" for that offense, thus rendering him eligible to file the instant motion.  See Oyler v. Allenbrand, 23 F.3d 292, 293-94 (10th Cir. 1992).

child pornography images created without the use of actual children.[2]  Finding

that the prohibition of such "virtual" child pornography chilled protected adult-to-

adult speech, the Court held that such prohibitions violated the First Amendment.

See Free Speech Coalition, 535 U.S. at 255.

In May 2002, Defendant filed a § 2255 motion in district court seeking to

have his conviction vacated on the basis that the Free Speech Coalition decision

should be applied to his petition retroactively, and arguing that Free Speech

Coalition renders his guilty plea unknowing and involuntary.  See Aplt. App. at

O18; United States v. Gigley, 213 F.3d 509, 516 (10th Cir. 2000) ("A guilty plea

is void if it is not knowing and voluntary.").  The district court refused to reach

the merits of Defendant's claims, finding that Defendant had not made a

sufficient showing to overcome the procedural bar precluding a court in a § 2255

action from reaching the merits of otherwise defaulted claims.  Aplt. App. at P1-

10; see United States v. Frady, 456 U.S. 152, 167-68 (1982).  In response to

Defendant's application to this court, we granted a certificate of appealability

(COA) on the twin questions of (1) whether Defendant has made a sufficient

showing of actual innocence to overcome the procedural bar against consideration

---

[2] Generally referred to as "virtual" child pornography, such images can be
created by using adults made to appear to be minors, or through the use of a
computer technology known as "morphing," whereby innocent images of actual
minors are altered to make it appear that the minors are engaged in sexually
explicit behavior.  See Free Speech Coalition, 535 U.S. at 241-42.

of defaulted claims, and (2) whether the Court's decision in Free Speech Coalition is retroactively applicable to petitions for collateral relief.

## Discussion

When reviewing a district court's denial of a § 2255 motion, we review the district court's legal conclusions de novo. United States v. Horey, 333 F.3d 1185, 1187 (10th Cir. 2003). We review the district court's findings of fact for clear error. United States v. Salazar, 323 F.3d 852, 855 (10th Cir. 2003).

A § 2255 motion is not intended as a substitute for an appeal. See Frady 456 U.S. at 164-65. Consequently "failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002); see also Bousley v. United States, 523 U.S. 614, 622 (1998). There are, however, two well recognized exceptions under which a defendant may escape application of the procedural bar against consideration of defaulted claims. First, if defendant can show both good cause for failing to raise the issue earlier, and that the court's failure to consider the claim would result in actual prejudice to his defense, the procedural bar will not be applied. See Frady, 456 U.S. at 167. Alternatively, because a writ of habeas corpus is "at its core, an equitable remedy," Schlup v. Delo, 513 U.S. 298, 319 (1995), if defendant can demonstrate that "failure to consider the federal

claims will result in a fundamental miscarriage of justice," Coleman v. Thompson, 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted), the court may reach the merits of the claimed constitutional deficiencies despite the procedural bar.

As both the Supreme Court and this court have recognized, the incarceration of one actually innocent of the crime of which he has been convicted constitutes a grave miscarriage of justice; it is equally well established that if a defendant can adduce new evidence in post-conviction proceedings showing that "constitutional error 'probably' resulted in the conviction of one who was actually innocent," Schlup, 513 U.S. at 322; see also United States v. Wiseman, 297 F.3d 975, 979 (10th Cir. 2002), the court may reach the merits of otherwise defaulted claims. In order to meet this standard, however, "[t]he petitioner [is] required to establish, by a fair probability, that the trier of facts would have entertained a reasonable doubt of his guilt." Schlup, 513 U.S. at 322 (internal quotations and citations omitted).

Defendant pled guilty, he did not raise his claims of constitutional error at trial, nor did he do so on direct appeal from his sentence. His claims, therefore, are subject in the first instance to a procedural bar. In an attempt to overcome the procedural bar and allow this court to reach the merits of his claims, Defendant alleges that he is actually innocent of the crime to which he pled guilty.

Specifically, Defendant claims that in light of the Supreme Court's decision in Free Speech Coalition, no reasonable juror would have found him guilty of possession of actual child pornography, as it would have been impossible to tell whether the images he was convicted of possessing were of actual or virtual child pornography. See Aplt. Br. at 51-53; Aplt. App. O18-O19, O21.

Though conceptually distinct from a sufficiency of the evidence claim, an actual innocence claim must be viewed in light of the reasonable doubt standard:

> The consideration in federal habeas proceedings of a broader array of evidence does not modify the essential meaning of "innocence." The Carrier [Murray v. Carrier, 477 U.S. 478 (1986)] standard reflects the proposition, firmly established in our legal system, that the line between innocence and guilt is drawn with reference to a reasonable doubt. See In re Winship, 397 U.S. 358 (1970). Indeed, even in Sawyer [Sawyer v. Whitley, 505 U.S. 333 (1992)], with its emphasis on eligibility for the death penalty, the Court did not stray from the understanding that the eligibility determination must be made with reference to reasonable doubt. Thus, whether a court is assessing eligibility for the death penalty under Sawyer, or is deciding whether a petitioner has made the requisite showing of innocence under Carrier, the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence.

Schlup, 513 U.S. at 328. There must be a showing "that no reasonable juror would have found the defendant guilty." Id. at 329. This requires "a probabilistic determination about what reasonable, properly instructed jurors would do." Id. Ultimately, actual innocence is not an easy showing to make:

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable

evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Id. at 324; see also Calderon v. Thompson, 523 U.S. 538, 559 (1998).

In deciding whether an evidentiary hearing is appropriate, Schlup instructs that a district court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." 513 U.S. at 331. Thus, a movant must identify evidence that demonstrates that he probably would not have been found guilty beyond a reasonable doubt by any reasonable juror. This requirement of identifying evidence on which an actual innocence claim will rest is essential. The actual innocence exception is grounded in the need "to balance the societal interests in finality, comity and conservation of scarce judicial resources with the individual interest in justice that arises in the *extraordinary case."* Id. at 324 (emphasis added). It is precisely the requirement that a movant adduce new reliable evidence that insures that the actual innocence exception does not swallow the procedural bar rule.

Defendant contends that he is actually innocent because it is impossible to tell beyond a reasonable doubt whether the images in this case "were actual identifiable minor children" or "simply computer generated images of non-existent, unidentifiable individuals and/or computer modified images of adults

which appeared to be or gave the impression that they were minors." Aplt. Br. at 52 n.15. We will assume in theory that if a movant really could produce evidence that would convince a reasonable juror that the image in question is indeterminate (such that it not possible to conclude that the image is actual beyond a reasonable doubt), a movant would be actually innocent.

In support of his assertions, Defendant included a transcript of Congressional testimony by the President of the National Center for Missing and Exploited Children condemning the process of creating virtual images indistinguishable from actual images, and a copy of a software advertisement (apparently from the internet) demonstrating the technique of morphing. Id. at n.16. Defendant also indicated that he would like to call an expert of counsel's choosing to support his theory.[3] Aplt. App. O23.

Certainly, such evidence has some probative value as to Mr. Cervini's innocence. The question is whether, when contrasted with the corresponding

---

[3] We do not overlook that in his § 2255 motion, Defendant listed several witnesses he would call, including himself, defense counsel, the special agent that procured the search warrant which led to the discovery of the images, a representative of an internet service provider that responded to a government subpoena and identified Defendant, and a paralegal who supplied an affidavit in support of Defendant's theory that defense counsel was ineffective for failing to adequately investigate and present his motion to suppress. See Aplt. App. O22, D4-D14, F2, & I1-I5. Most, if not all, of this evidence pertains to Defendant's claim of ineffectiveness based upon counsel's unsuccessful motion to suppress. The district court rejected this claim and we did not grant a COA on it.

evidence of guilt, such evidence is powerful enough to convince a court that no reasonable juror would have voted to convict. We think it is not. Consistent with Schlup, we must view this showing or proffer against the proceedings that led to Defendant's conviction. See also Blackledge v. Allison, 431 U.S. 63, 72-74 (1977) (comparing the petitioner's allegations against the record in deciding whether to have an evidentiary hearing). In other words, in considering Mr. Cervini's claim of actual innocence we must consider what reasonable jurors would do had they been aware of both the original evidence of guilt as well as the newly presented, and presumably exculpatory, evidence.

Defendant worked as a computer technician at a university and was familiar with computers. Aplt. App. O11. The plea colloquy reflects the following:

> Q:  As to Count Two of the indictment, on or about September 7, 1999, in Weatherford, Oklahoma did you knowingly possess images of child pornography that were contained on your computer?
>
> A:  Yes, I did.
>
> Q:  Did the images show persons under the age of 18 engaged in sexually explicit conduct?
>
> A:  Yes

Aplt. App. at N14-15; accord Aplee. Br. at 8-10 (Plea Agreement and Petition to Enter Guilty Plea). He also admitted in the plea agreement that his computer

"contain[ed] visual depictions *involving the use of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252A*." Aplt. App. M4 (emphasis added).

While the statement in the plea colloquy might not be conclusive, see United States v. Pearl, 324 F.3d 1210, 1214 (10th Cir. 2003), Defendant's admission in the plea agreement is quite specific that actual minors were used; not indistinguishable images. In the face of this admission, it simply is not probable that no reasonable juror would find him guilty beyond a reasonable doubt–no matter what an expert might now say.[4] At oral argument, counsel clearly stated that Defendant is not contending that the images were virtual, but only that it is difficult to tell the difference. This means that none of his proffered evidence will directly contradict his apparent admissions in the plea colloquy. These factors are not decisive, but they are part of the overall picture to which we must look in determining what any rational juror would probably do.

We also must consider Defendant's failure to say anything in his proffer about his own knowledge of the provenance of the image. Especially in light of his computer expertise, if this image came from a source that plausibly could have been virtual, Defendant would be in a position to know that. He has not

---

[4] We note that under United States v. Kimler, 335 F.3d 1132, 1142 (10th Cir. 2003), a jury is entitled to reach the conclusion, based on the image alone and without expert evidence, that the image is actual.

- 10 -

claimed, for example, that he utilized software that allowed images to be manipulated or obtained these or others from such a source. He also would know the rough ages of the pictured children, which would bear on the likelihood that they were morphed images of adults. Similarly, if the image's appearance was atypical in a way that suggested on its face that it was virtual (for instance, if it seemed at all unlifelike or blurry), Defendant could have so averred. In sum, the images were purportedly of actual children, and there are no facts alleged that would probably would prevent any reasonable juror from finding, beyond a reasonable doubt, that the images were exactly what they purported to be.

The vague character of Defendant's proffer regarding what his witnesses, including an expert, would actually say, about this claim does not favor an evidentiary hearing. Of course, we cannot require too much specificity about what the expert would *conclude* about images Defendant doesn't have, but Defendant could at least indicate what kinds of methods the expert would use in order to evaluate whether the images could have been computer-generated.[5] District courts are entitled to some latitude with regard to evidentiary hearings, and the standard is higher than notice pleading. See Schlup, 513 U.S. at 332

---

[5] In his § 2255 motion, Defendant moved for discovery of the images. See Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. He does not challenge the district court's apparent denial of that motion. Arguments not raised by the parties in their briefs are deemed waived. See Hooks v. Ward, 184 F.3d 1206, 1233 n.25 (10th Cir. 1999)

(noting that in the context of an evidentiary hearing request, the court may consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence"). District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim.

Because we find that Defendant has not made a showing of actual innocence sufficient to overcome the procedural bar against consideration of defaulted claims, we decline to reach the merits issue of whether Free Speech Coalition is retroactively applicable to cases on collateral attack.

The dissent contends that the plea colloquy is of virtually no probative value because the legal significance of a distinction between actual and virtual images was irrelevant at the time it occurred. We have never held that factual admissions made during the plea process may not be considered unless a Defendant appreciated fully the legal significance of those admissions. The oath is not so conditional. We may consider the plea colloquy in light of the plea agreement. Although the dissent recognizes, as it must, that Mr. Cervini in his plea agreement admitted that the images involved the *use* of minors engaging in sexually explicit conduct, the dissent would completely discount such an admission because the plea colloquy does not contain the words "actual minor." The ordinary and reasonable meaning of the admission in the plea agreement is

- 12 -

that the images involved the "use" of real minors. The dissent's approach is at odds with Schlup, which instructs that in assessing claims of actual innocence, we must look at all the evidence in probabilistic fashion. 513 U.S. at 328, 330; see also Phillips v. Ferguson, 182 F.3d 769, 774-75 (10th Cir. 1999) (in assessing actual innocence, court considered evidence of defendant's involvement in the crime). Defendant's admission that the images involved the use of minors engaging in sexually explicit activity, even in light of his new evidence that it is difficult to tell whether some images are virtual or actual, undermines his actual innocence claim that he probably would not be found guilty beyond a reasonable doubt by any reasonable juror. Schlup, 513 U.S. at 329; see also Bousley, 523 U.S. at 624 (recognizing factual nature of an actual innocence claim even given an intervening Supreme Court decision).

The dissent is simply wrong when it claims that the only difference between this case and Pearl lies in the words "depict" used in Pearl, 324 F.3d at 1214, and "show" used in the plea colloquy in this case. In Pearl, this court considered the defendant's admission that the images in question depicted minors engaged in sexually explicit conduct. In response to the Pearl dissent's desire to affirm regardless of the legal error contained in the jury instructions, this court remarked that such an admission did not require affirmance of the convictions because the word "depict" is what led to the holding in Free Speech Coalition.

- 13 -

Id.  In Pearl, the defendant contested his guilt, went to trial and preserved this issue in a challenge to the indictment which this court viewed as extending to the jury instructions.  In this case, the Defendant did not raise the issue, instead pleading guilty and in the process admitting that the images not only *showed* minors engaging in sexually explicit activity, but also involved the *use* of minors engaging in sexually explicit conduct in violation of the statute.

Finally, the dissent ascribes far too much significance to our observation about Defendant's computer expertise.  While the dissent would require that Defendant have specialized training or job experience in computer photo manipulation before considering this factor, we do not.  Defendant had access to over 100 computers and he worked on computers on a regular basis both as a university library computer technician and as a student.  Aplt. App. O-13.  More importantly, he posted two images of child pornography to an internet news group.  Given his background, it is entirely reasonable to require him to state a factual basis for his suspicion that it is impossible to tell whether the images are virtual or actual–by discussing the source of the images, the ages of the pictured children, or why the posted image itself[6] would be easily subject to manipulation.

---

[6]  The posted image was described in the affidavit for the search warrant and the presentence report as "an unknown minor female's exposed genitals.  The unknown minor's legs are spread and the image is centered on the genitals." Aplt. App. D-10; see also Aplt. Supp. App. A-4.

For the foregoing reasons, the judgment of the district court denying Defendant's § 2255 motion is

AFFIRMED.

No. 03-6144, *United States v. Cervini*

**HOLLOWAY**, Circuit Judge, dissenting:


The bar the majority requires Cervini to hurdle to overcome the procedural default in his case is to adduce evidence that would "convince a reasonable juror that the image in question is indeterminate (such that it is not possible to conclude that the image is actual beyond a reasonable doubt) . . . ." Majority Op. at 8. I agree. I am, however, unable to agree with the majority that Cervini has failed to clear this obstacle.

The majority concludes that the evidence Cervini seeks to have introduced is insufficient, when considered in light of his plea colloquy, to establish a fair probability that "no reasonable juror would find him guilty beyond a reasonable doubt . . . ." *Id.* at 10. In reaching this conclusion, the majority concedes ignorance about what evidence Cervini seeks to have introduced. Indeed, the majority recognizes the unfairness of requiring Cervini to proffer what his expert will testify to given that he does not possess the images in question.

Nonetheless, the majority boldly concludes that "no matter what an expert might now say," *id*. at 10, Cervini would be unable to convince a reasonable juror that the image in question is indeterminate. I disagree for three principal reasons: (1) at the time of his plea colloquy, it was irrelevant under the statute whether the images in question were of real or virtual children; (2) Cervini's vocation as a

computer technician does not, *ipso facto*, render Cervini an expert in computer photo manipulation; and (3) Cervini's plea colloquy produced a record here with the same ambiguity about the word "depict" that led to the Supreme Court's holding in *Free Speech Coalition*. *See United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003).

First, the probative value of Cervini's plea agreement in respect to whether the images in question were of real or virtual minors is of dubious value considering that at the time of the plea, that distinction was irrelevant. The admissions cited by the majority were made pursuant to Fed. R. Crim. P. 11, which requires a court to establish "a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). At the time of his plea on September 24, 2000, however, it was irrelevant whether the images he possessed were of real or virtual minors. Indeed, this court recently recognized that prior to the Supreme Court's decision in *Free Speech Coalition v. Ashcroft*, "this and other circuits had considered (and most had rejected) the argument that criminalization of virtual child pornography violated the First Amendment." *United States v. Harms*, __ F.3d __, __ (10th Cir. 2004).

Thus, at the time Cervini pled guilty, a factual basis for his plea could have been established by either admitting the images were of actual or virtual minors. The ignorance of the parties involved in this plea as to the significance of the

distinction between real and virtual child pornography is further reflected in the glaring absence of any specific inquiry by the sentencing court or the government as whether the images in question were of actual minors. And, since Cervini's plea colloquy was never intended to answer the question of whether the images in question were real or virtual when entered into, it should not now.

Second, the majority's conclusion that Cervini's vocation as a computer technician would make him able to know the difference between real and virtual minors is without support. While the record reveals Cervini worked as a computer technician, the record does not indicate that he had any specific training or job experience on computer photo manipulation. App. of Exhibits I at A10-11. To assume, as does the majority, that this familiarity with computers would grant Cervini the ability to distinguish between real and virtual children would be akin to assuming that a criminal defense attorney's general familiarity with the law would enable him to design a perpetual charitable trust. Moreover, the very essence of Cervini's petition is that it is *impossible* to tell whether the images he possessed were real or virtual. Thus, the record does not support the majority's implication that if the images were in fact virtual, Cervini would have stated so during his colloquy.

Finally, Cervini's plea agreement in this case does not materially differ from the record we held inadequate to sustain a conviction for possession of child

pornography in *Pearl*, 324 F.3d at 1214. In *Pearl*, the defendant admitted the images he possessed "depicted minors engaged in sexually explicit conduct." *Id.* Nonetheless, we held that admission was insufficient to sustain the defendant's conviction because of the "the ambiguity in the word 'depict.'" *Id.* (quotation marks in original).

In the instant case, Cervini admitted that the images he possessed "show[ed] persons under the age of 18 engaged in sexually explicit conduct" and that they contained "visual depictions involving the use of minors engaging in sexually explicit conduct . . . ." Appendix of Exhibits II at M4. On the basis of these admissions, the majority concludes that Cervini admitted "*actual* minors were used." Majority Op. at 10 (emphasis added). However, nowhere in the plea colloquy are the words "actual minor" used. Instead, the only difference between the plea colloquy in this case and the record in *Pearl* is the use of the word "show" instead of "depict." And, while legal scholars can debate the difference between those two words, I do not believe the difference to be significant enough, when uttered by a layman, to hold that one, but not the other, implicates virtual minors.

Given the ambiguity in Cervini's plea colloquy as to whether the images he possessed were of real rather than virtual minors, and the similarity of the colloquy in this case and the record in *Pearl*, I cannot conclude that "no matter

what an expert might now say," Majority Op. at 10, it would be impossible to "convince a reasonable juror that the image in question is indeterminate (such that it is not possible to conclude that the image is actual beyond a reasonable doubt)." Accordingly, I respectfully dissent.