FILED
United States Court of Appeals
Tenth Circuit

April 23, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GLENN M. GALLANT,

Defendant-Appellant.

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOUGLAS R. BAETZ,

Defendant-Appellant.

No. 13-1041
(D.C. Nos. 1:12-CV-00136-RPM &
1:03-CR-00232-RPM-4)
(D. Colo.)

No. 13-1048
(D.C. Nos. 1:12-CV-00175-RPM &
1:03-CR-00232-RPM-5)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

_____

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Glenn M. Gallant, represented by counsel, and Douglas R. Baetz, proceeding pro se (collectively, movants), appeal the district court's denial of their 28 U.S.C. § 2255 motions to vacate, set aside, or correct their convictions asserting that their trial attorneys were constitutionally ineffective. Exercising jurisdiction under 28 U.S.C. §§ 2255(d) and 2253, we affirm.

## *Background*

The factual background is fully described in movants' direct appeals, *see United States v. Gallant*, 537 F.3d 1202, 1210-19 (10th Cir. 2008), and the parties are aware of the facts, so we provide only a brief summary.

Movants owned and operated Century Financial Services, Inc. (Century). In the mid-1990s, Century contracted with BestBank (the Bank), a Colorado bank insured by the Federal Deposit Insurance Corporation (FDIC), to market to subprime borrowers credit cards issued by the Bank. There were different programs, which Century also managed for the Bank: first a secured-card program and later a separate, unsecured-card program that offered borrowers membership in the All Around Travel Club (AATC). In addition to the opportunity to apply for a BestBank VISA card, membership in AATC offered the opportunity to take a reduced-price cruise and other travel benefits. The Bank and Century split the fees from the credit-card programs, which were very popular. The AATC program alone opened approximately 500,000 credit-card accounts. The programs also had huge rates of

- 2 -

default, however; many cardholders did not pay the amounts charged to their accounts, including amounts the Bank had advanced to Century or had used for its own operations. Ultimately, the losses exceeded the Bank's ability to pay, and the FDIC closed the Bank in July 1998.

The government blamed both movants and the Bank's top officers for the Bank's failure. It named all the defendants in one indictment, but the two groups (movants and the Bank officers) were tried separately. Mr. Gallant and Mr. Baetz each had his own counsel at trial. By agreement of counsel, Mr. Baetz's attorney took the lead in opening, closing, and witness examination, and Mr. Gallant's attorney followed.

One of the government's theories was that Century's cover-up of delinquencies caused the Bank to file inaccurate reports regarding reserves (known as "call reports") with the FDIC. Among other things, the evidence at trial showed that, during the relationship between Century and the Bank, Century "opened a number of [secured-card] accounts without receipt of the mandatory minimum $250 security deposit," but "did not issue cards or account statements to the purported cardholders." *Id.* at 1211. Century also took measures to disguise delinquencies in the secured-card program, including "re-aging" the accounts ("removing their delinquency status and making them appear current without any payments by the cardholders"), and simultaneously crediting and debiting fees to make the account appear current. *Id.* at 1211-12. With the AATC program, Century "concealed the

existence of some accounts by not issuing plastic cards or sending account statements to the purported cardholders"; posted $20 credits to delinquent accounts, which caused them to appear current; and posted "paid ahead" notations on accounts that had never received any payments from cardholders. *Id.* at 1213-15.

The jury convicted movants of the majority of the charges against them, including conspiracy to commit bank fraud, wire fraud, and false reporting; bank fraud; false bank reports; wire fraud; and continuing financial crimes enterprise. Movants were sentenced to 120 months of imprisonment. On direct appeal, this court reversed two of the wire-fraud convictions, *see id.* at 1228-30, and affirmed all the other convictions, *see id.* at 1254-55. In the government's cross-appeal, this court remanded for resentencing because the district court erred in calculating the amount of loss and in imposing sentencing enhancements without making required findings. *See id.* at 1235-42, 1244-45. On remand, the district court sentenced movants to 135 months of imprisonment. Movants voluntarily dismissed their direct appeals from their new sentences.

Movants then filed separate § 2255 motions, each claiming that his trial attorney was ineffective in violation of his Sixth Amendment right to the assistance of counsel. Without holding an evidentiary hearing, the district court denied relief. But it granted movants' applications for certificates of appealability (COA) on two issues: whether the district court erred in denying movants' claims of ineffective

- 4 -

assistance of counsel, and whether the district court erred in deciding the § 2255 motions without conducting an evidentiary hearing.

## *Analysis*

On appeal, movants have filed a joint opening brief arguing that the district court erred in denying them relief under § 2255, and that it erred in deciding their motions without holding an evidentiary hearing. *See United States v. Weeks*, 653 F.3d 1188, 1200 (10th Cir. 2011) ("Review in a section 2255 . . . action entails a two-step inquiry: (1) whether the defendant is entitled to relief if his allegations are proved; and (2) whether the district court abused its discretion by refusing to grant an evidentiary hearing." (alteration and internal quotation marks omitted)). Generally, "[i]n considering the denial of a § 2255 motion for post-conviction relief, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011). "But where, as here, the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de novo." *Id.* We review the denial of an evidentiary hearing for abuse of discretion. *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), movants have a two-part burden: they must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." For the first prong, they "must show that counsel's representation fell below an objective standard of

reasonableness," considering all the circumstances. *Id.* at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted) (quoting *Strickland*, 466 U.S. at 689, 690).

To satisfy the second prong, movants "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S. Ct. at 787-88 (citation omitted) (quoting *Strickland*, 466 U.S. at 693, 687).

This court may elect to decide an ineffective-assistance claim on either the performance or the prejudice prong. *See Strickland*, 466 U.S. at 697. "Even under *de novo* review, the standard for judging counsel's representation is a most

deferential one." *Harrington*, 131 S. Ct. at 788. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696.

## I.      Issues That Movants Believe Counsel Should Have Explored

Movants' opening brief identifies a number of specific issues that, movants contend, would have created reasonable doubt had their counsel presented them to the jury. The district court did not err, however, in concluding that these alleged failures do not establish ineffective assistance of counsel.

Movants insufficiently support their allegations that the ignored issues would have helped their defense. They assert that counsel should have called Harold Hendrickson, John Schmalzer, and Keith McDaniel as witnesses; should have asked Charles Wolfschlag additional questions in cross-examination; should have preserved A.J. Felton's testimony before his death or at least offered testimony he gave in a deposition in a civil case that preceded the criminal case; and should have better prepared defense witnesses Richard Huddleston and John Low. But in support of these contentions, movants offer nothing but their own descriptions of these witnesses' prospective testimony (or, in the case of Mr. Huddleston, their civil counsel's conclusory descriptions regarding anticipated testimony in a separate civil case). These unsupported descriptions, which also fail to show that the uncalled witnesses would have testified at trial, are insufficient to show prejudice. *See Snow v. Sirmons*, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (to show prejudice, habeas

petitioner "must show not only that the testimony of an uncalled witness would have been favorable, but also that the witness would have testified at trial" (brackets and internal quotation mark omitted)); *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004) ("District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."); *Neill v. Gibson*, 278 F.3d 1044, 1056 (10th Cir. 2001) (district court did not abuse its discretion in disregarding affidavits, submitted by investigators looking into juror misconduct, which contained inadmissible hearsay); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about  the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

In any event, several of movants' issues actually did arise at trial, including the Bank's control of the Century operating account; that Century was required to purchase all accounts that were delinquent; that the $20 credits were transparent and were known or apparent to various Bank officials[1]; that Century, as a guarantor of the

---

[1]     On direct appeal, we rejected this argument in part, stating that "Baetz and Gallant are not absolved from bank fraud by having successfully recruited BestBank officers and directors to participate in their scheme."  *Gallant*, 537 F.3d at 1225.

Also, in addition to the movants' joint argument on this point, Mr. Gallant asserts that counsel should have shown that he had nothing to do with the initial decision to apply the $20 credits to cardholder accounts.  Michael Mansueto's

(continued)

cardholders' accounts, had the right to make payments to those accounts[2]; that movants were trying to make the businesses succeed, while the Bank's officers were taking large bonuses and demanding more and more concessions from Century; and that movants had no responsibility for the Bank's call reports.[3] Even if counsel did not explore these issues as vigorously as movants, in hindsight, would wish, we cannot conclude that movants have shown either deficient performance or prejudice.

---

testimony placed that evidence before the jury, so Mr. Gallant was not prejudiced. But in any event Mr. Gallant's hands are not entirely clean with regard to the $20 credits; he admits in his declaration in this § 2255 proceeding that he had an ongoing role in applying the credits, in that he "determine[d] whether money was available to make these payments and . . . authorize[d] the disbursement of the funds." R. Vol. III at 699.

[2]    At trial, counsel requested an instruction on this theory, which the district court refused, and counsel also argued for acquittal under Fed. R. Crim. P. 29 on this ground. On direct appeal, this court held that "the proposed jury instruction did not fit the facts of the case," in that "the government did not contend that each individual credit was, somehow, inherently illegal. Rather, the government's case against Baetz and Gallant centered on the aggregate number of cardholder delinquencies and the increase in that number over time." *Gallant*, 537 F.3d at 1233. Thus, even if counsel had not presented this theory, movants could not show prejudice.

[3]    In addition to movants' joint argument on this point, each movant makes his own argument. Mr. Gallant states that counsel should have shown his utter lack of knowledge and involvement regarding the call reports, but he does not specify how counsel should have accomplished this task. Particularly, it appears that the most direct evidence of what Mr. Gallant did not know would have been his own testimony, but he waived his right to testify, due to his health. Mr. Baetz asserts that his counsel should have proved that Mr. Baetz was unaware of the information that went into the call reports. As discussed in Section III below, Mr. Baetz asserts that he wanted to testify on his own behalf, but it does not appear that his failure to testify prejudiced him.

Two other issues movants identify—that accounts could be opened and charges for AATC membership and fees applied immediately after verification and credit approval, and that AATC members did not need vouchers to exercise their right to take a reduced-price cruise—also arose at trial, but the evidence was equivocal. Evaluating all the circumstances, however, it does not appear that there is any reasonable probability that the results of the trial would have been different had counsel further explored these issues.

Finally, movants also assert that counsel was ineffective in not researching, understanding, and correctly presenting (1) concepts such as reaging, and, (2) with regard to cross-examining government witnesses Marion Harris and Jeffrey Opp, "banking regulations and terms as they applied to credit card programs, call reports, and reserves." Aplt. Br. at 50. As part of this argument, movants also state that counsel was ineffective for not challenging the government's characterization of the instructions for the call reports. We are not convinced that movants' interpretations of the call report instructions are sound. Also, as the government asserts, these arguments involve "abstract propositions" that ignore the "[a]bundant evidence" of fraud that was introduced at trial. Aplee. Br. at 35; *see also Gallant*, 537 F.3d at 1228 (rejecting a direct-appeal argument relating to the call report instructions). And with regard to the cross-examinations, movants' unspecific description of counsels' alleged failures is insufficient to require reversal for an evidentiary hearing.

*See Cervini*, 379 F.3d at 994. Accordingly, these arguments satisfy neither the performance nor the prejudice prong.

## II. Failure of Mr. Gallant's Counsel to Act Independently

Mr. Gallant asserts that his counsel failed to exercise independent judgment and provide independent representation, instead deferring too much to Mr. Baetz's counsel. As examples, he points to his counsel's failure to bring out the evidence in the areas discussed above, failure to convince Mr. Baetz's counsel to allow Mr. Baetz to testify, and failure to meet with Mr. Gallant sufficiently to prepare for trial.

As discussed above, the alleged failure to further explore certain areas did not constitute ineffective assistance. It also does not show that Mr. Gallant's trial counsel sacrificed his judgment to the judgment of Mr. Baetz's counsel. Rather, the record tends to contradict this allegation. In his opening statement, Mr. Gallant's counsel made sure that the jury knew that the defense had been cautioned to avoid duplication, stating, "I've been cautioned not to be repetitive, so please don't misinterpret my brevity in cross-examination [as] not passion for the question." R. Vol. VIII at 75. He was successful in establishing that some evidence did not involve Mr. Gallant, and then he moved for Mr. Gallant's acquittal under Fed. R. Crim. P. 29, arguing, as summarized by the district court during trial, "separately and independently that in all of these counts, there's not sufficient evidence with respect to Mr. Gallant's participation to warrant submission of these counts to the jury with respect to him[.]" *Id*. Vol. XXIV at 2541. In his closing argument, counsel noted,

"[I]f you look at the totality of evidence in this case, there is so little evidence that came in about conversations with my client, Mr. Gallant . . . ." *Id.* Vol. XXVI at 145. He then went on to highlight specific testimony. He also reminded the jury that they had to examine the evidence against Mr. Gallant separately.

With regard to Mr. Gallant's second example, the decision whether to testify belonged to Mr. Baetz, not to his counsel or to Mr. Gallant's counsel. *See Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004). And as discussed in Section III below, it does not appear that Mr. Baetz's failure to testify prejudiced the defense. We cannot conclude that Mr. Gallant's counsel performed deficiently on this ground.

Finally, Mr. Gallant's third example only states without elaboration that counsel failed to meet with Mr. Gallant sufficiently before trial. He fails to cite any legal authority and fails to explain how this alleged failure prejudiced his defense. Accordingly, the argument is waived by inadequate briefing. *See United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011).

## III. Failure of Mr. Baetz's Counsel to Allow Him to Testify

Mr. Baetz asserts that his counsel was ineffective by denying him his right to testify on his own behalf. In his declaration, he states that he and his counsel disagreed on whether he should testify. He asserts:

> On the last day of testimony, I insisted that I wanted to testify. [Counsel] stated that he would not allow me to do so, and that if I did take the stand, I'd 'better find another lawyer, because [he would] withdraw.' I found myself in the position of not knowing whether [counsel] would follow through on his threat and also knowing that, even if I did take the stand, I hadn't been prepared by [counsel] for

- 12 -

testimony. . . . Under these circumstances, due to his inaction and threats I believed that if I chose to testify it would be a disaster.

R. Vol. V at 142-43. We assume that, if his assertions are true, Mr. Baetz has satisfied *Strickland*'s performance prong.[4] *See Cannon*, 383 F.3d at 1171. However, we cannot conclude that he has shown prejudice sufficient to remand for an evidentiary hearing. As discussed above, many of the theories he discusses in his declaration were explored during the trial. Moreover, had he testified, he undoubtedly would have been subject to a damaging cross-examination. In these circumstances, even though "[w]e are . . . cognizant of the power of a face-to-face appeal," *id.* at 1172, we cannot conclude that there is a reasonable probability that Mr. Baetz's proposed testimony would have altered the outcome of the trial.

For these reasons, movants have failed to show that they are entitled to relief under § 2255. That being so, the district court did not abuse its discretion in denying an evidentiary hearing.

---

[4] We note, however, that during the trial, outside the presence of the jury, the district court personally addressed Mr. Baetz regarding his right to testify, and Mr. Baetz waived that right without raising any concerns regarding his counsel's alleged coercion.

*Conclusion*

Mr. Baetz's motion to proceed on appeal without prepayment of costs or fees is granted. The judgment of the district court is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge