UNITED STATES COURT OF APPEALS

TENuth CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEFFREY LEMON, JR.,

    Defendant - Appellant.

No. 20-6119
(D.C. Nos. 5:19-CV-00073-R &
5:15-CR-00185-R-1)
(W.D. Okla.)

---

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

---

Before **HOLMES**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

---

Mr. Jeffrey Lemon, Jr., appeals from the district court's denial of his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He requests a certificate of appealability ("COA") to authorize us to reach the merits of his appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we **deny** him a COA and **dismiss** the matter.

**I**

Mr. Lemon was indicted by a federal grand jury on eighteen counts of theft

---

[*]     This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

of mail matter by a United States Postal Service employee, in violation of 18 U.S.C. §§ 2 and 1709.  At his arraignment, the magistrate judge appointed Assistant Federal Public Defender William P. Early to represent Mr. Lemon.

Mr. Early and Mr. Lemon's attorney-client relationship soured, such that on the night before the trial, Mr. Lemon moved the court for leave to replace Mr. Early with a salaried attorney and moved for a continuance.  Mr. Lemon complained, among other things, that Mr. Early failed to visit the post office where he worked to talk with some employees.  Mr. Lemon also complained that Mr. Early failed to interview certain prospective witnesses before trial.  Mr. Early, for his part, supported Mr. Lemon's requests but nevertheless claimed that he did visit the post office and interviewed the employees and witnesses whom Mr. Lemon specifically identified.  Mr. Early explained that the whole issue regarding Mr. Lemon's disagreement with him came down to what he thought was appropriate versus what Mr. Lemon thought was appropriate to do for trial preparation.  On that matter, Mr. Early told the district court that his trial strategy was adequately prepared.  Given this information, the court chose to deny Mr. Lemon's motions.

At trial, the government called twenty-two witnesses.  Mr. Lemon's appointed counsel cross-examined twenty of them, but did not call any witnesses. Thirteen of the government's witnesses testified that they purchased and mailed

money orders at the post office but that the money orders were never received by their intended recipients.  And all but one of those witnesses provided a physical description of the postal clerk who assisted them; their descriptions matched Mr. Lemon.  Evidence was also provided showing that the money orders were cashed by a certain "Clerk 4," which was Mr. Lemon's employee status number at the post office.  There also was testimony that no other postal clerk logged into the post office's computer system as "Clerk 4."  Evidence also showed Mr. Lemon's propensity for gambling.  And crucially, evidence was admitted showing that Mr. Lemon confessed to the crime in the form of a written statement under penalty of perjury, wherein he admitted to cashing the money orders.

Mr. Lemon's counsel challenged the credibility of the government's evidence by showing that the investigators did not use all of the available techniques at their disposal when they were investigating Mr. Lemon.  Counsel for Mr. Lemon particularly noted that the government did not do certain things—e.g., "record [an] interview [between investigators and Mr. Lemon], obtain video surveillance, use tracker devices, or obtain [Mr. Lemon's] bank records"—in an attempt to attack the government's investigation.  *See United States v. Lemon*, 714 F. App'x 851, 855 (10th Cir. 2017) (unpublished).

The jury found Mr. Lemon guilty of seventeen counts of theft of mail matter by a postal service employee.  The district court sentenced Mr. Lemon to twelve

3

months' imprisonment and two years of supervised release, the latter of which was later extended by twelve months due to a violation.

Mr. Lemon appealed from his convictions, arguing that the district court prejudicially erred by denying his motion for a continuance filed on the eve of trial, admitting his confession to postal investigators, admitting evidence of his gambling, excluding his repudiation of his prior confession, and instructing the jury that the government was under no obligation to use any particular investigative method. A panel of this court upheld the district court's rulings on all of these challenged matters. *See Lemon*, 714 F. App'x at 853.

On January 25, 2019, Mr. Lemon filed the instant § 2255 motion. Mr. Lemon asked the district court to vacate his convictions and order a new trial because he received ineffective assistance of counsel. Specifically, he argued that his counsel was ineffective because of counsel's failure to call certain defense witnesses, to introduce into evidence certain photos of the post office and Mr. Lemon's bank statements, and to adequately cross-examine government witnesses.

The district court denied the motion. The district court reasoned that, first, Mr. Lemon offered nothing but his own descriptions of the potential defense witnesses' testimony. Second, the district court noted that the photos of the post office were redundant of the photos the government already introduced into evidence. As for the bank statements, the district court observed that Mr. Lemon

4

failed to produce anything that would substantiate his allegation that the bank records would have demonstrated his financial stability; indeed, there was evidence at trial showing that Mr. Lemon had financial difficulties during the relevant period. Lastly, the district court found that Mr. Lemon's argument regarding his counsel's failure to cross-examine witnesses was unavailing because Mr. Lemon's claims about the potential witnesses and their testimony were either unsupported assertions, contrary to the record, potentially detrimental to his own case, or simply irrelevant in rebutting the government's case-in-chief—inadequacies that made the district court conclude that Mr. Lemon failed to show how he was prejudiced by his counsel's purported failures.

The district court also denied Mr. Lemon a COA. Mr. Lemon thereafter filed a notice of appeal, seeking the issuance of a COA to challenge the court's dismissal of his habeas petition.

## II

Before our court may fully consider and rule on the merits of Mr. Lemon's appellate claims, he must obtain a COA to appeal from the district court's order denying his § 2255 motion. *See* 28 U.S.C. § 2253(c)(1)(B); *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006) ("A COA is a jurisdictional pre-requisite to our review." (citing *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003))). We may

grant a COA only if Mr. Lemon "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

In its seminal decision, *Slack v. McDaniel*, the Supreme Court shed light on the showing required to satisfy this statutory standard:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

529 U.S. 473, 484 (2000).

In other words, because the COA inquiry "is not coextensive with a merits analysis," the "only question" at this stage "is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 327).  In fact, if a court of appeals "first decid[es] the merits of an appeal, and then justif[ies] its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction."  *Id.* (quoting *Miller-El*, 537 U.S. at 336–37).

Mr. Lemon's ineffective-assistance claim implicates the well-settled standard that the Supreme Court articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Therefore, in determining whether to grant Mr. Lemon a COA,

we must employ this standard.  Under *Strickland*, proponents of an ineffective-assistance claim must carry a two-fold burden: they must show (1) that "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."  *Id*.

Mr. Lemon argues that a COA is warranted because reasonable jurists could disagree about the district court's disposition of his § 2255 motion.  Boiled down to its essence, Mr. Lemon predicates this argument on two points.  First, Mr. Lemon alleges that his counsel unreasonably failed to investigate and develop evidence that would have undermined the government's case.  Second, and relatedly, he argues that the court erred in not conducting an evidentiary hearing regarding his ineffective-assistance claim.  We disagree on both points and conclude that reasonable jurists would not debate whether the district court properly denied Mr. Lemon's ineffective-assistance claim without holding an evidentiary hearing.

**A**

Mr. Lemon stresses that his counsel's "investigation into independent witnesses" was lacking, leading "to [Mr. Lemon's] prejudice."  Aplt.'s Opening Br. at 10.  To illustrate that contention, Mr. Lemon enumerates various things that certain witnesses *could* have proffered as testimony but for his counsel's lack of investigation: one of the witnesses, the post office manager, "could have testified

that postal inspectors did review video evidence and found no evidence of untoward actions by Mr. Lemon"; his counsel's cross-examination of a police investigator "could have [] established that Mr. Lemon's girlfriend and now wife . . . borrowed and used" Mr. Lemon's casino player's card, which ostensibly would have served to negate the evidence of his gambling habit; "supervisors at the post office could have testified there was not enough cash on hand" for Mr. Lemon to have cashed money orders valued at up to $1,000 every business day; defense counsel "would have learned" that another postal employee "purchased a money order from Mr. Lemon, the same money order claimed to have been purchased when [a] victim['s] money order was cashed," and that same postal employee "would have stated that he bought the money order under" Mr. Lemon's name; and, lastly, quite a few postal workers also had access to Mr. Lemon's password and work station and had significant financial problems. *Id.* at 11–12.

However, Mr. Lemon's arguments do not persuade us that reasonable jurists would conclude that the district court's resolution of his ineffective-assistance claim was debatable or wrong. Mr. Lemon offers nothing more than bald, vague assertions—without proper evidentiary support through affidavits or otherwise—regarding the substance and trial impact of prospective witnesses' testimony. Yet, under *Strickland*, that is not good enough. *See Snow v. Sirmons*, 474 F.3d 693, 730 n.42 (10th Cir. 2007) (noting that, to show prejudice under

8

*Strickland*, a litigant "must show . . . that the testimony . . . would have been favorable, [and] that the witness [actually] would have testified at trial" (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990))); *see also United States v. Gallant*, 562 F. App'x 712, 715 (10th Cir. 2014) (unpublished) ("Movants insufficiently support their allegations that the ignored issues would have helped their defense. . . . [M]ovants offer nothing but their own descriptions of these witnesses' prospective testimony . . . . These unsupported descriptions, which also fail to show that the uncalled witnesses would have testified at trial, are insufficient to show prejudice."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

Put more specifically, Mr. Lemon does not provide witness affidavits, cite to helpful statements in the trial record, or quote documents from his trial counsel's interviews with any of these potential witnesses to bolster his ineffective-assistance claim.  What Mr. Lemon proffers is merely his unsupported claims about what certain potential witnesses *could* have said at trial and how such testimony *could* have affected his case, and that is insufficient to demonstrate what

Mr. Lemon's proposed supportive witnesses' actual "testimony would have been."

*See United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986).

In sum, reasonable jurists would not debate the district court's resolution of

Mr. Lemon's ineffective-assistance claims.[1]

**B**

Further, Mr. Lemon's complains about the district court's decision not to

hold an evidentiary hearing. Mr. Lemon did ask the district court—albeit in

cursory fashion—to grant him such a hearing, but the court effectively denied him

this relief. Mr. Lemon's complaints in this regard, however, do nothing to cast

any doubt on the propriety of the district court's ultimate resolution of his

ineffective-assistance claim. More specifically, reasonable jurists would not

debate the correctness of that resolution on the existing record—without an

evidentiary hearing. Under the circumstances here, it follows ineluctably no

---

[1]     Mr. Lemon also suggests that his counsel was "not prepared with respect to the defense case." Aplt.'s Opening Br. at 10. Supposedly, "[a]s a result of that, defense counsel failed to develop evidence, either on cross-examination or through independent witnesses, that would have cast significant doubt on the government's case." *Id.* Mr. Lemon does not meaningfully support these assertions—which gives us no reason to question our decision to deny him a COA on his ineffective-assistance claim. As noted, his appointed counsel told the district court he was ready to go to trial and had a trial strategy in hand. And, under that strategy, defense counsel attacked the government's investigation of Mr. Lemon. Mr. Lemon does not demonstrate how counsel's approach in this respect was inadequate.

reasonable jurist would debate that the district court did not abuse its discretion in denying Mr. Lemon an evidentiary hearing to prove up the allegations of his ineffective-assistance claim.

Under § 2255, a district court must conduct an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); *accord United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000). "We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (quoting *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004)).

Mr. Lemon makes no distinct argument in support of an evidentiary hearing. Nor does he explain why the district court abused its discretion in denying him one. He merely notes the statutory conditions under which the grant of an evidentiary hearing is required, refers us back to his substantive ineffective-assistance arguments, and conclusorily asserts that he is "entitled to an evidentiary hearing on his ineffective assistance of counsel claim[.]" Aplt.'s Opening Br. at 15; *see also id.* at 7 (stating conclusorily that "[t]he petition stated sufficient facts to warrant an evidentiary hearing"). Given this skeletal presentation, we could rightly deem this argument to be waived. *See Eizember v. Trammel*, 803 F.3d 1129, 1145 (10th Cir. 2015) (citing *Grant v. Trammell*, 727 F.3d 1006, 1025 (10th Cir. 2013)); *see also Fairchild v. Trammell*, 784 F.3d 702, 724 (10th Cir. 2015)

11

("Even a capital defendant can waive an argument by inadequately briefing an issue." (quoting *Grant*, 727 F.3d at 1025)).

However, even if we were inclined to decipher the likely substance of this argument, we would conclude that it does not aid Mr. Lemon's quest for a COA. As suggested by our discussion, *supra*, regarding his substantive ineffective-assistance argument, Mr. Lemon has provided no evidence that would have given the district court "a firm idea of what the [proffered] testimony will encompass and how it will support [his ineffective-assistance] claim." *Moya*, 676 F.3d at 1214 (quoting *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004)). Instead, he merely relied on his unsupported and conclusory assertions regarding what certain witnesses might say.

Not only did this vague and nebulous presentation ultimately doom Mr. Lemon's ineffective-assistance claim and render the district court's denial of it—on the existing record—beyond reasonable debate, it also makes clear that the district court could not have abused its discretion in denying him an evidentiary hearing regarding this claim. *See, e.g.*, *Cervini*, 379 F.3d at 993 ("The vague character of Defendant's proffer regarding what his witnesses . . . would actually say[] about this claim does not favor an evidentiary hearing."). Put another way, given the patent weaknesses of Mr. Lemon's ineffective-assistance claim on the existing record, no reasonable jurist would debate that the district court did not abuse its discretion in effectively ruling that the existing record conclusively

shows that Mr. Lemon is *not* entitled to relief.  *See Moya*, 676 F.3d at 1214

("Given the conclusory nature of Defendant's allegations, the district court's

denial of an evidentiary hearing was not an abuse of discretion.").

## III

For the foregoing reasons, we **DENY** Mr. Lemon's request for a COA and

**DISMISS** this matter.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge