**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 3, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

DARNELL PITTMAN, SR.,

      Petitioner - Appellant,

v.

JACK FOX, Warden,

      Respondent - Appellee.

No. 18-1178
(D.C. No. 1:17-CV-02842-CMA)
(D. Colo.)

_____

DARNELL PITTMAN, SR,

      Petitioner - Appellant,

v.

JACK FOX, Warden,

      Respondent - Appellee.

No. 18-1180
(D.C. No. 1:17-CV-02319-CMA)
(D. Colo.)

_____

DARNELL PITTMAN, SR.,

      Petitioner - Appellant,

v.

JACK FOX, Warden,

      Respondent - Appellee.

No. 18-1185
(D.C. No. 1:17-CV-02968-CMA)
(D. Colo.)

_____

DARNELL PITTMAN, SR.,

Petitioner - Appellant,

v.

JACK FOX, Warden,

Respondent - Appellee.

No. 18-1214
(D.C. No. 1:16-CV-02570-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

Darnell Pittman, Sr., a federal prisoner appearing pro se, seeks appellate review of the district court's rulings and judgments in four separate cases arising under 28 U.S.C. § 2241. We have combined the appeals for disposition only. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and construing Pittman's pro se filings liberally, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008), we affirm in each appeal. In No. 18-1078, we grant Pittman's application to proceed on appeal without prepayment of costs or fees.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    No. 18-1214[1]

### A.    Background

In 2016, Pittman filed a pro se § 2241 application for a writ of habeas corpus against his warden, challenging a prison misconduct report he received while incarcerated at a United States Penitentiary, Coleman I.  Pittman had a hearing before a disciplinary hearing officer (DHO), Aaron Rich, who found Pittman had committed the charged offense.  As a sanction, DHO Rich disallowed 27 days of good conduct time (GCT) and 90 days of telephone privileges.  In his application, Pittman asserted there were due process violations at the disciplinary hearing, and he sought expungement of the misconduct report.  The case was eventually assigned to Magistrate Judge Scott T. Varholak and was fully briefed by February 2017.[2]  In August 2017, Pittman filed a petition for a writ of mandamus in this court seeking to expedite the resolution of his habeas case.

In October 2017, Magistrate Judge Varholak decided to appoint counsel for Pittman pursuant to 18 U.S.C. § 3006A, and he set the matter for an evidentiary hearing.  The magistrate judge determined that on the record then before the court, he could not resolve a factual dispute whether prison officials had forged Pittman's signature on a form containing a handwritten waiver of his rights to have a staff

---

[1] We address these appeals in order of analytical convenience.

[2] The parties consented to the magistrate judge conducting all proceedings in the case pursuant to 28 U.S.C. § 636(c).

3

representative and to present a witness at the prison disciplinary hearing, and whether any constitutional due process violation resulting from the alleged failure to obtain a valid waiver of those rights was harmless.[3] An Assistant Federal Public Defender entered her appearance on Pittman's behalf later that month.

In November 2017, the warden filed a Notice of Expungement of Incident Report, suggesting the case had become moot because the misconduct report had been removed from Pittman's record and his GCT credit had been restored. Through counsel, Pittman opposed the warden's suggestion of mootness, alleging the warden had not provided sufficient documentation that Pittman's GCT credit had been restored. A few weeks later, on January 2, 2018, a second Assistant Federal Public Defender entered an appearance on behalf of Pittman. On January 4, the warden filed documentation showing the GCT credit had been restored and explaining why that did not result in a net reduction in Pittman's projected release date—he had lost more GCT in 2015 and 2016 and he had dropped a GED class, which reduced the number of days of GCT he could earn. The same day, the parties filed a Stipulation of

---

[3] Among those factual disputes were (1) the DHO's declaration submitted in the case contained contradictory statements about when and how Pittman's alleged waiver was obtained, including that he waived his rights when he was presented with the notice of the hearing; however, the notice clearly indicated Pittman wished to have both a representative and witnesses; (2) the lack of any indication by the DHO how Pittman's alleged "waiver came about or in what form—oral or written—it was allegedly provided," R., Vol. II at 15; (3) the lack of evidence authenticating a copy of the notice form that contained an undated, handwritten waiver and a signature, neither of which were mentioned in the DHO's declaration; and (4) the copy of the notice form Pittman had submitted did not contain the handwritten waiver and signature.

Dismissal Without Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). In a minute order filed the next day, January 5, Magistrate Judge Varholak ordered the district court clerk to close the case, noting the parties had stipulated to dismissal of the case and stating that pursuant to Rule 41(a)(1)(A)(ii), "no order of dismissal is necessary." R., Vol. II at 69.

On April 16, 2018, Pittman filed a pro se Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 60(b)(1). Pittman alleged that his court-appointed counsel acted without authority when she entered into the stipulated dismissal without his knowledge or consent. Pittman then argued he was prejudiced by counsel's act because his current release date had not been affected by the expungement of the incident report and the restoration of the 27 GCT days. He also challenged at length the historic calculation of his GCT credits, disallowances, and forfeitures the warden had attached to his January 4 filing.

Noting that Pittman was still represented by counsel, the district court struck the motion because it did not comply with the court's local rule, D.C.COLO.LAttyR 5(a)(5), prohibiting litigants represented by counsel from filing documents pro se. The court also determined the motion did not comply with D.C.COLO.LCivR 5.1(a)'s requirement that "each pleading and document filed in a civil action shall be formatted, signed, and filed electronically in CM/ECF as prescribed by the Electronic Case Filing Procedures," and that an exception in those procedures for filings by unrepresented prisoners did not apply to Pittman because he had counsel. The court instructed Pittman that if he wanted to challenge his sentence

5

on grounds not raised in his § 2241 application, he had to file a separate action after exhausting administrative remedies. Pittman appeals.

## B. Discussion[4]

On appeal, Pittman argues Magistrate Judge Varholak abused his discretion in relying on the two local rules to strike the Rule 60(b)(1) motion because the two Assistant Federal Public Defenders who entered appearances on his behalf were the magistrate judge's former colleagues, and the three conspired to mishandle Pittman's case in retaliation for the mandamus petition he filed. Pittman contends that because

---

[4] The warden argues that we lack jurisdiction over this appeal because Pittman filed his Rule 60(b)(1) motion more than three months after the district court's minute order acknowledging the parties' stipulated dismissal of the case, and therefore it was outside the 60-day period for filing a notice of appeal, *see* Fed. R. App. P. 4(a)(1)(B)(iii). The warden points to our case law explaining that "when Rule 60(b)(1) is used to challenge a substantive ruling by the district court, we have required that such a motion be filed within the time frame required for the filing of a notice of appeal," *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 (10th Cir. 1996), and where such a motion is not filed within that time frame, we lack "jurisdiction to consider the motion," *Gillon v. Bureau of Prisons*, 393 F. App'x 550, 553–54 (10th Cir. 2010).

This rule does not apply here, however, because in his Rule 60(b)(1) motion, Pittman did not challenge a substantive ruling by the district court. Instead, he asserted an argument we discussed in *Cashner*—that "an attorney in the litigation ha[d] acted without authority from a party." *Cashner*, 98 F.3d at 576. We distinguished a Rule 60(b)(1) motion advancing that sort of mistake—a mistake by the parties—from one requesting reconsideration of a judge's "substantive mistake of law or fact in the final judgment or order," *id.*, and our relevant discussion concerned whether a Rule 60(b)(1) motion asserting a judicial mistake had to be filed within the time limit for taking an appeal, *id.* at 578. There is no indication in either *Cashner*, or in *Gillon*'s nonbinding interpretation of *Cashner*, that a Rule 60(b)(1) motion asserting a party's litigation mistake, such as unauthorized attorney action, must be filed within the time frame for taking an appeal in order to preserve appellate jurisdiction to review the district court's disposition of it.

6

Magistrate Judge Varholak closed the case on January 5, 2018, he was permitted to file the Rule 60(b)(1) motion pro se based on a different local rule, D.C.COLO.LAttyR 15(g)(4)(B), stating that appointment of counsel terminates when a case is dismissed. We disagree with each of these contentions.

First, although Pittman contends there is circumstantial evidence of a conspiracy to compromise his case in retaliation for the mandamus petition he filed, he points to nothing other than the allegation that the magistrate judge and the two appointed attorneys had previously worked together in the same office. This conclusory allegation, which suggests Magistrate Judge Varholak was biased against him, is insufficient to raise his accusation above mere speculation, and we therefore reject it. *See Leatherwood v. Allbaugh*, 861 F.3d 1034, 1050 (10th Cir. 2017) (noting that "speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" are "almost always insufficient to establish bias" (internal quotation marks omitted)). Moreover, although Pittman may dispute the resulting calculation of his release date, he obtained the relief he requested—expungement of the incident report and restoration of his GCT credits—which largely renders moot his claim of a conspiracy against him or judicial bias.

Second, "[w]e review a district court's application of its local rules for abuse of discretion." *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1147 (10th Cir. 2006). We disagree with Pittman that the magistrate judge abused his discretion in relying on D.C.COLO.LAttyR 5(a)(5) and D.C.COLO.LCivR 5.1(a) rather than D.C.COLO.LAttyR 15(g)(4)(B). The last of these local rules provides that "[a]n

7

attorney appointed *under this rule* shall represent the unrepresented party from the date of the Entry of Appearance until . . . the case is dismissed." D.C.COLO.LAttyR 15(g)(4)(B) (emphasis added). But Pittman's counsel were not appointed under that local rule, which concerns the court's Civil Pro Bono Program, *see* D.C.COLO.LAttyR 15(a). Counsel was appointed under 18 U.S.C. § 3006A. And an appointment under § 3006A does not end when a district court case is dismissed or, in this instance, closed. *See* 18 U.S.C. § 3006A(c) ("A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court *through appeal*, including ancillary matters." (emphasis added)). We therefore conclude that the magistrate judge did not abuse his discretion in construing the local rules to prohibit Pittman's pro se filing. Consequently, we affirm the magistrate judge's order striking Pittman's Rule 60(b)(1) motion.

II.    No. 18-1178

A.    Background

In January 2016, while incarcerated at Coleman I, Pittman was issued an incident report charging him with threatening another with bodily harm. The report alleged as follows: A correctional officer making rounds noticed the window in Pittman's cell was covered with a towel. Pittman uncovered the window and began cursing and demanded to use the telephone. When the officer told him the telephone was in use elsewhere, Pittman became more agitated and indicated he would break the window and set off the fire suppression system. Pittman then said, "Goodman

8

isn't a hard name to find, you think I can't get to you? I'll get to you and your family. You better check my paperwork, you know what I'm back here for." R. at 171 (internal quotation marks omitted).

When the incident report was delivered to Pittman, he denied ever speaking to the officer, instead accusing the officer of coming to his "door talking shit to [him] about [another correctional officer]." *Id.* (internal quotation marks omitted). On further investigation by the Unit Disciplinary Committee (UDC), Pittman was advised of his rights and given the opportunity to make a statement to the investigating officer. He "stated he had no comment other than what he already said." R. at 172.

The UDC referred the matter to a DHO for a further hearing. Before the DHO hearing, Pittman was transferred from Coleman I to Coleman II (they are both in the same complex), where he was issued an allegedly "manipulated version of the original UDC incident report," R. at 7 (capitalization omitted), and was led to believe the original UDC report, which included the names of two witnesses he wanted to present at a disciplinary hearing, had been lost. Pittman appeared for a second UDC hearing, where he reiterated his request for the two witnesses and stated he could not identify those witnesses without staff assistance. The UDC again referred the matter to a DHO for further hearing.

DHO Rich—the same DHO who held the disciplinary hearing leading to the case underlying appeal No. 18-1214—held a hearing. According to DHO Rich's report, Pittman was given advance written notice of the charge (a copy of the incident

9

report) and written notice of his rights at the hearing. Although Pittman initially asked to present two witnesses and for a staff representative to assist him at the hearing, he waived both. He refused to sign a waiver but allowed a prison staff member to sign it for him and indicated he was ready to proceed with the hearing. He denied the charge but presented no evidence. The DHO considered Pittman's statement that he was not guilty but found the officer was specific in his testimony about the statements Pittman had made, and therefore found the greater weight of the evidence supported finding Pittman guilty of a lesser charge—being insolent to a staff member. The DHO therefore disallowed 14 days of GCT and imposed other sanctions.

In November 2017, while his first § 2241 was still pending before Magistrate Judge Varholak, Pittman filed a pro se § 2241 application, claiming the DHO hearing violated his Fifth Amendment due process rights. Pittman alleged as follows: At the hearing, Pittman informed DHO Rich that he was unwilling to proceed with the hearing without a staff representative and his witnesses, and he requested another opportunity to obtain the names of those witnesses. DHO Rich told Pittman that unless he provided the names of his witnesses, the hearing would go on. Pittman responded that it was not his fault the original UDC paperwork had been lost when he was transferred from Coleman I to Coleman II, and that due to the transfer, he had been separated from his witnesses and required a staff representative to assist him in gathering them. DHO Rich denied that request and proceeded with the hearing without obtaining Pittman's consent to do so in the absence of a staff representative

10

and witnesses. Pittman asked the court to expunge his disciplinary conviction and restore his GCT credits.

On February 17, 2018, Magistrate Judge Gordon P. Gallagher ordered the defendant warden to show cause why the § 2241 application should not be granted. He further ordered "that within twenty-one days of [the warden's] answer to the show cause order [Pittman] may file a reply." R. at 85. He also entered an order drawing the case to district judge Christine M. Arguello and Magistrate Judge Kathleen M. Tafoya.

Pittman filed a motion objecting to the order drawing the case to Judge Arguello and Magistrate Judge Tafoya, claiming that was error. Pointing out that the § 2241 case he had before Magistrate Judge Varholak (i.e., the case underlying appeal No. 18-1214) had been terminated within 12 months of the instant case, Pittman suggested the instant case should have been assigned to Magistrate Judge Varholak under D.C.COLO.LCivR 40.1(d)(1), which provides: "If an unrepresented party in a new case already has a case pending or had a case terminated within 12 months of the new filing, the new case shall be assigned to the judicial officers who were assigned the earlier case." Pittman also filed a motion requesting an indeterminate extension of time to file a "Reply in Rebuttal to Respondent's Order to Show Cause," noting that he had a cast on his dominant hand, which also had nerve damage, and that he had an even worse nerve problem in his other hand. Supp. R. at 5 (some capitalization omitted). Pittman created both motions by cutting individual words from various sources and pasting them to a sheet of paper.

11

While those motions were pending, the warden sought an extension of time to file his response to the show-cause order, which the district court granted. The court then struck Pittman's motion objecting to the order drawing the case pursuant to D.C.COLO.LCivR 7.1(i),[5] and denied his motion for an extension of time to submit a reply, stating that the "Order to Show Cause applies to Respondent only." R. at 90.

The warden filed his response on March 22, 2018. With the response, the warden provided DHO Rich's sworn declaration. In relevant part, DHO Rich testified that when Pittman elected to waive a staff representative and witnesses at the hearing but refused to sign that he had done so, DHO Rich wrote on the hearing notice form: "'I request to waive the staff rep and witness. . . . [R]efused to sign but willing to waive.'" R. at 105 (quoting R. at 174). DHO Rich further testified that Lieutenant P. Burns, who was present at the hearing as an escort, "witnessed both statements via signature." *Id.*; *see also* R. at 174 (signature of "P. Burns" accompanying waiver signed by DHO Rich). The warden later submitted a sworn declaration from Lieutenant Burns attesting to the same facts.

Pittman filed two motions on March 30, 2018. In one, he sought leave to file a supplemental pleading in which he again argued the case should be assigned to Magistrate Judge Varholak under D.C.COLO.LCivR 40.1(d)(1). In the other, he asked the court to reconsider its denial of his motion for an extension of time to reply to the warden's answer, explaining that he was not seeking more time to file a reply

---

[5] Under D.C.COLO.LCivR 7.1(i), the district court may strike a filing that is "verbose, redundant, ungrammatical, or unintelligible."

12

to the show-cause order but to the warden's response, and that although his cast had been recently removed, he still had nerve damage and lack of strength in his hand. While those motions were pending, Pittman filed a reply to the warden's response on April 12, which was 21 days after the warden filed his response to the show-cause order.

Soon thereafter, the district court summarily denied Pittman's motions to file a supplemental pleading and to reconsider granting an extension of time to file a reply to the warden's response. The district court also declined to consider Pittman's reply because the court found it untimely. The court then denied the § 2241 application, crediting the warden's evidence that Pittman had waived the opportunity to call witnesses and have a staff representative, and concluding that Pittman had put forth no evidence supporting his contrary, conclusory assertion. Pittman appeals.

**B. Discussion**

### 1. Motion regarding assignment of case

We first address Pittman's challenge to the district court's denial of his motion for leave to file a supplemental pleading arguing that his case should be assigned to Magistrate Judge Varholak.[6] Pittman contends his § 2241 action met the

---

[6] In his opening brief, Pittman mentions that the district court struck his motion objecting to the order drawing the case to Judge Arguello and Magistrate Judge Tafoya based on D.C.COLO.LCivR 7.1(i). But he has not advanced any argument that the district erred in doing so. He has therefore waived appellate review of that ruling. *See Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").

requirements of D.C.COLO.LCivR 40.1(d), thereby mandating reassignment of his case to Magistrate Judge Varholak. He argues the district court's failure to do so was prejudicial error because Magistrate Judge Varholak was familiar with the same alleged procedural irregularities surrounding the validity of Pittman's purported waiver of his rights to have a staff representative assist him and to present witnesses at the DHO hearing. He posits that because his case was not reassigned, the warden was able to submit new and allegedly false evidence in this case to better support the contention that he validly waived his rights at the hearing.[7]

"We review a district court's application of its local rules for abuse of discretion." *McInnis*, 458 F.3d at 1147. As Pittman points out, we have "recognized that local rules are binding in some circumstances." *Hernandez v. George*, 793 F.2d 264, 266 (10th Cir. 1986). But we have "also recognized that district courts have discretion in applying local rules." *Id.* On balance, we have concluded that "although district judges must follow local rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules." *Id.* at 267

---

[7] Pittman also argues the district court's denial of his motion for leave to file a supplemental pleading was an abuse of the court's discretion to allow supplemental pleadings under Federal Rule of Civil Procedure 15(d). But because he did not invoke Rule 15(d) in that motion, we decline to consider it. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) ("As a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question.").

14

Pittman observes that the purpose of a district court's local rules is to facilitate the court's operation. We agree. As we have stated, "[l]ocal rules are primarily housekeeping rules; their purpose is to facilitate operation of the court." *Hernandez*, 793 F.2d at 266. Local Rule 40.1(d) is clearly designed to aid judicial efficiency, not to confer any rights on an unrepresented litigant regarding assignment of his case. But assuming, for the sake of argument, that it was more efficient for Magistrate Judge Varholak to handle the case, the only harm was to the district court, because it is beyond dispute that cases must be decided on their own facts. *See, e.g.*, *Juarez v. Kennecott Copper Corp.*, 225 F.2d 100, 102 (10th Cir. 1955) ("[E]ach case must stand upon its own facts[.]"). The facts surrounding the validity of Pittman's alleged waiver of his rights at the disciplinary hearing in each of these two cases are materially different (*compare* R. at 105, 174, 228, *with supra*, note 3), and Pittman had an equal opportunity in this case to advance arguments that his waiver was invalid. We therefore conclude that D.C.COLO.LCivR 40.1(d) did not require the district court to assign this case to Magistrate Judge Varholak, either at the time the order drawing the case to Judge Arguello and Magistrate Judge Tafoya was entered, or at Pittman's later urging. Consequently, the district court did not abuse its discretion in denying Pittman's motion to file a supplemental pleading seeking reassignment.

### 2. Motions for extension of time and to reconsider

We next address Pittman's challenge to the district court's denial of his motion for an extension of time to reply to the warden's response to the § 2241 petition and

15

his motion for reconsideration of that ruling. Whether these rulings were in error is moot because, as the warden concedes, and we agree, Pittman's reply was filed within the 21-day time-limit the district court set in its order to show cause. The warden filed his response on March 22, 2018, and Pittman filed his reply on April 12, exactly 21 days later. Consequently, the district court erred in refusing to consider the reply because it was untimely. We therefore proceed to consider whether the district court's refusal to consider the reply was harmless. And as we will explain, we conclude that it was harmless, because even considering the reply, and further assuming Pittman was deprived of his due process rights at the hearing, Pittman fails to establish that staff representation or the testimony of his witnesses would have aided his defense or affected the outcome. Therefore, any due process violation was itself harmless. *See Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (holding that "errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review").

### 3. Harmless error and the merits

Federal inmates must be afforded due process before their GCT can be revoked. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 812 (10th Cir. 2007). But "the full panoply of rights due a [criminal] defendant . . . does not apply" in prison disciplinary proceedings resulting in the loss of GCT. *Wolff*, 418 U.S. at 556. Instead, such a proceeding satisfies due process if it affords the inmate (1) written notice of the violation at least 24 hours before the hearing, (2) an opportunity to call witnesses and present documentary

16

evidence (if consistent with institutional safety and correctional goals) to an impartial decision-maker, and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–66, 571. Additionally, where an inmate is illiterate or the issues so complex that the inmate would likely be unable "to collect and present the evidence necessary for an adequate comprehension of the case," he should be allowed assistance from either another inmate or a prison staff member. *Id.* at 570.

Pittman argues the district court erred in finding he had not submitted any evidence in support of his conclusory assertion that he did not waive his rights to a staff representative and to present witnesses. He asserts that his § 2241 application adhered to the requirements of Rule 2(c) of the Rules Governing Section 2254 Cases, which can be made applicable to § 2241 applications, *see* Rule 1(b), Rules Governing Section 2254 Cases (hereafter, Habeas Rule). In relevant part, Habeas Rule 2(c) directs that a habeas petition must "specify all the grounds for relief available to the petitioner," Habeas Rule 2(c)(1), and must "state the facts supporting each ground," Habeas Rule 2(c)(2).

We need not resolve whether the district court erred in deeming Pittman's allegations regarding the waiver of his *Wolff* rights conclusory, or in determining that the warden's evidence refuted those allegations. Instead, we will assume, for purpose of argument and without deciding, that Pittman was denied his due process rights to a staff representative and witnesses and turn the focus to whether the record

17

shows Pittman suffered prejudice as a result of the assumed due process violation.[8]
*See Howard*, 487 F.3d at 813 (concluding that where prisoner failed to demonstrate
"how further testimony would have aided his defense," he suffered no prejudice, and
any error in excluding testimony at disciplinary hearing "was harmless"); *cf. Chesson
v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993) (explaining, in a 42 U.S.C. § 1983
case, that a prisoner cannot maintain a due process claim for failure to permit witness
testimony unless he also shows that the testimony "would have affected the outcome
of his case").

In both his application and his reply to the warden's response, Pittman
provided only conclusory statements regarding the putative testimony of the
witnesses he would have presented. In his § 2241 application, Pittman identified his
two witnesses by name; one was his cell mate at the time of the incident, and the
other was housed in the neighboring cell. He did not indicate what their testimony
would be other than to say they would testify on his "behalf." R. at 11. In his reply,
he asserted that his "witnesses would have testified that [Pittman made] no
threatening or insolent comment(s) towards any staff." R. at 212. But DHO Rich's
decision turned on the specificity of the reporting officer's account of the incident.
Without some specific details of the testimony the witnesses would have provided,
Pittman has not shown their testimony would have aided his defense or affected the

---

[8] The district court did not rely on this basis to deny Pittman's application, but we may "affirm on any ground for which there is a sufficient record to permit conclusions of law." *Grossman*, 447 F.3d at 805 n.2.

18

outcome of the proceeding. And on appeal, Pittman identifies only one role a staff representative would have filled—to obtain the witnesses. Consequently, Pittman has not shown prejudice resulting from the assumed due process violation. We therefore conclude the district court's failure to consider his reply was harmless, as was any due process violation.

## III.    No. 18-1180

### A.  Background

In December 2015, while housed at Coleman I, Pittman was issued an incident report alleging he threatened another with bodily harm. According to the report, Pittman refused to release his hand restraints and yelled at a correctional officer, "you're fucking with the wrong one," "go ask Washburn about fucking with me," and "I'll do to you the same thing I did to Washburn." R. at 157 (internal quotation marks omitted). After relinquishing the hand restraints, Pittman added, "You ain't that big, go ahead and roll the door and come in the cell." *Id.* (internal quotation marks omitted). When the incident report was delivered to Pittman, he was advised of his right to remain silent, and he did not request any witnesses. He also denied the allegations against him, stating "I did not threaten that man, I said he was big and I give him what he is looking for." R. at 158. The matter was referred to the UDC, where Pittman again denied the allegations against him. The UDC referred the matter to a DHO with a recommendation that Pittman be sanctioned.

The same DHO as in the two previously discussed cases, Aaron Rich, held a hearing on January 13, 2016. According to DHO Rich's report, Pittman was given

19

advance written notice of the charge (a copy of the incident report) and written notice of his rights at the hearing, and although Pittman initially asked to present a witness and for a staff representative to assist him at the hearing, he waived both at the time of the hearing. The Notice of Disciplinary Hearing form shows Pittman had requested three witnesses, each of whom would testify that "the officers came harassing inmate Pittman and Pittman never said anything to them." R. at 164 (some capitalization omitted). At the bottom of the notice is a handwritten statement: "I request to waive the staff rep and witness above," accompanied by an illegible signature. *Id.*

DHO Rich's report provides further details: Pittman indicated he was ready to proceed with the hearing, denied the charge, and stated the officer was lying. DHO Rich considered Pittman's allegation that the reporting officer was lying but found that "the staff members' statement and observations" were "more credible." R. at 162 (capitalization and bolding omitted). DHO Rich found the reporting officer's observations more credible because they were "specific" and "made strictly in the performance of his duties." *Id.* (capitalization and bolding omitted). DHO Rich further found that the reporting officer had no reason to falsely accuse Pittman, whereas Pittman "had much to lose by accepting responsibility or being truthful." *Id.* (capitalization and bolding omitted). DHO Rich found the greater weight of the evidence supported finding Pittman had committed the offense of threatening another with bodily harm. He therefore disallowed 27 days of GCT and imposed 60 days of disciplinary segregation.

20

In September 2017, while his first case was still pending before Magistrate Judge Varholak, Pittman filed a § 2241 application asserting DHO Rich had violated his Fifth Amendment due process rights. He alleged he was not present for the disciplinary hearing and DHO Rich never notified or informed him why he was unable to attend the hearing. He also advanced a seemingly contradictory allegation—that the prison's special housing unit's (SHU) staff visitor log book did not reflect that DHO Rich ever entered the SHU, where Pittman was housed, between January 10 and January 16, 2018, so "[i]t would have been virtually impossible for [him] to have conducted a hearing" in the SHU on January 13. R. at 7. Pittman further alleged he had requested staff representation and several witnesses, but he was not given an opportunity to present his witnesses or favorable documentary evidence.

On January 15, 2018, Magistrate Judge Gallagher ordered the warden to show cause within 21 days why the § 2241 application should not be granted. He further ordered "that within twenty-one days of [the warden's] answer to the show cause order [Pittman] may file a reply." R. at 136. The same day, Magistrate Judge Gallagher entered an order drawing the case to Judge Arguello and Magistrate Judge Tafoya.

The warden filed a response on February 5, 2018, exactly 21 days after the show-cause order was filed. With the response, the warden provided a sworn declaration from DHO Rich. In relevant part, DHO Rich explained that during disciplinary hearings, he requires all inmates to be restrained "for fundamental

21

correctional reasons." R. at 148 n.2. He stated that because Pittman's hands were restrained behind his back, DHO Rich wrote the phrase indicating Pittman waived witnesses and a staff representative. Pittman then signed his name while his hands were still restrained behind his back, which accounted for the difference in the signature's appearance from Pittman's normal signature. DHO Rich also explained that in weighing the evidence, it was not just Pittman's word against the reporting officer's word, "but . . multiple staff members corroborated the reporting staff member's statement." R. at 149.[9]

Per the court's order, Pittman's optional reply was due on February 26, 2018. He did not file a reply by that date, but he did make two filings before that date, both of which were composed in a cut-and-paste fashion. The first was a letter to the district court clerk stating that his hand was in a cast and that although it was no longer broken, the doctors were keeping him casted to "punish" him and "stop [his] suit speech protest." R. at 166. He did not request any specific relief, and there is no court ruling regarding it. Pittman's second filing prior to the due date for his optional reply was a "Motion Requesting Relief," in which he asked the court to summarily grant him relief due to the warden's alleged failure to timely file the response to the show-cause order. R. at 169. He noted he had not received any notification that the court had granted an extension of time to file a response to the

_____

[9] In support of that explanation were two memos completed by other staff members bearing the date of the incident and setting forth corroborating statements. *See* R. at 159, 160.

22

show-cause order. He also explained that since December 14, 2017, he had been physically unable to access the court due to his broken hand, and prison officials had repeatedly denied him an opportunity to inform the court of that fact. The district court denied the motion, finding the warden's response was timely filed.

After the due date for his reply had passed, Pittman filed two motions identical to those he filed in the case underlying appeal No. 18-1178. The first asked that the case be assigned to Magistrate Judge Varholak pursuant to D.C.COLO.LCivR 40.1(d)(1). The second requested an indeterminate extension of time to file a reply "in Rebuttal to Respondent's Order to Show Cause," noting that he still had a cast on his dominant hand, which also had nerve damage, and that he had an even worse nerve problem in his other hand. R. at 174. The district court struck the order seeking reassignment pursuant to D.C.COLO.LCivR 7.1(i), and it denied the motion for an extension of time, stating that the "Order to Show Cause applies to Respondent only." R. at 176.

Pittman later filed two more motions that also were identical to motions he filed in the case underlying appeal No. 18-1178: a motion for leave to file a supplemental pleading, arguing that the case should be assigned to Magistrate Judge Varholak, and a motion asking the court to reconsider its denial of his motion for an extension of time to reply to the warden's answer. In yet another motion filed in early April 2018, he sought leave to file a motion for equitable tolling of the deadline for his reply to the warden's response. In his attached proposed motion for equitable tolling, he argued that his broken, casted hand had prevented him from completing

23

and filing documents in this case, and that in December 2017, prison officials (1) falsely represented that they had informed the court of this fact and (2) had denied his request for assistance in filing motions and grievances "without explanation." R. at 190.

On April 6, 2018, while those three motions were pending, Pittman filed a reply to the warden's response to the show-cause order. Pittman attached a copy of the SHU staff visitor log book for the month in which his hearing was held.

Soon thereafter, the district court summarily denied Pittman's pending motions for leave to file a supplemental pleading, reconsideration of an extension of time to file a reply to the warden's response, and leave to file a motion requesting equitable tolling. The district court declined to consider the reply Pittman filed because the court found it untimely.

In the same order, the district court also denied the § 2241 application on the merits. It first rejected Pittman's assertion that DHO Rich denied him the right to be present at the disciplinary hearing. The court noted Pittman had provided no documentary evidence to support his allegation that the SHU staff visitor log book did not show DHO Rich had entered the SHU on the date of the hearing. The district court found the warden had presented "far more than the requisite 'some evidence'" that Pittman was present at the hearing. R. at 231. The court then detailed that evidence: (1) DHO Rich had testified in his declaration that Pittman was present for the entire hearing; (2) DHO Rich's report, which was written within one week of the hearing, clearly stated he had verbal exchanges with Pittman and quoted Pittman as

saying the accusing officer had lied; and (3) Pittman's signature appeared after DHO Rich's revision to the Notice of Discipline Hearing waving witnesses and a staff representative, and DHO Rich testified that Pittman had asked him to make that revision at the hearing. The court concluded it had no reason, nor had Pittman suggested any reason, "to believe that DHO Rich's testimony and the accompanying documentary evidence [was] not credible." *Id.*

The court next credited the warden's evidence that at the hearing, Pittman had waived the opportunity to call witnesses and have a staff representative. The court found that the Notice of Discipline Hearing form confirmed DHO Rich's testimony that Pittman asked him to write the waiver on the bottom of the form and then signed it, because the form contained "a hand-written revision in blue ink" stating "'I request to waive the staff rep and witness above,'" and Pittman's signature appeared below that "in a different handwriting style and in black ink." R. at 232 (quoting R. at 148). The court concluded that the record therefore refuted Pittman's "conclusory assertion that he was denied the opportunity to call witnesses and have a staff representative," reiterated that it had no reason to doubt DHO Rich's credibility or the supporting evidence, and added that "[t]here is unquestionably 'some evidence' to support DHO Rich's conclusion." R. at 232–33. Pittman appeals.

**B. Discussion**

**1. Motion regarding transfer of case**

We first address Pittman's challenge to the district court's denial of his motion for leave to file a supplemental pleading arguing that his case should be assigned to

25

Magistrate Judge Varholak.[10]  That motion and the proposed supplemental pleading were identical to those he filed in the case underlying appeal No. 18-1178, and as in that case, the district court summarily denied the motion.  Likewise, the substance of his appellate challenge to the denial of that motion is materially identical to the argument he raised in appeal No. 18-1178.  We therefore reject it for the same reasons set forth in our discussion in No. 18-1178.

## 2. Motions for extension of time and to reconsider

We next consider Pittman's challenge to the district court's orders denying his motion for an extension of time to file a reply and his motion for reconsideration of that denial.  Our review is for abuse of discretion, taking into consideration the relevant procedural "rule and the facts before the district court." *Rachel v. Troutt*, 820 F.3d 390, 394 (10th Cir. 2016).  "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable," or where it "exceeded the bounds of permissible choice, given the

---

[10] In his opening brief, Pittman mentions that the district court struck his motion objecting to the order drawing the case to Judge Arguello and Magistrate Judge Tafoya based on D.C.COLO.LCivR 7.1(i).  But he has not advanced any argument that the district erred in doing so.  He has therefore waived appellate review of that ruling. *See Becker*, 494 F.3d at 913 n.6 ("An issue or argument insufficiently raised in the opening brief is deemed waived.").  Pittman also argues the district court's denial of his motion for leave to file a supplemental pleading was an abuse of the court's discretion to allow supplemental pleadings under Federal Rule of Civil Procedure 15(d).  But because he did not invoke Rule 15(d) in that motion, we decline to consider it. *See Daigle*, 972 F.2d at 1539 ("As a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question.").

facts and the applicable law in the case at hand." *Carter v. Bigelow*, 787 F.3d 1269, 1278 (10th Cir. 2015) (internal quotation marks omitted). Although "[i]t is preferable that the district court set forth its reasons for denying a motion that calls for the exercise of its discretion[,] . . . a failure of explanation is harmless when the record reveals the apparent reason or reasons justifying the denial." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004).

Pittman contends the district court's rationale for denying Pittman's motion for an extension of time to file a reply—that the court's show-cause order "applie[d] to Respondent only," R. at 176—rests on a misunderstanding that he wanted more time to reply to the show-cause order itself rather than to the warden's response to it. But the court's alleged confusion is understandable given that Pittman's request for more time to file a reply contained a grammatical error—he asked for more time to "reply in rebuttal to *Respondent's* Order to Show Cause," R. at 174 (emphasis added) (some capitalization omitted). "Respondent" refers to the warden, but it was the court that issued the show-cause order, not the warden. Based on the ambiguity Pittman's grammatical error introduced, it was within the bounds of permissible choice in the circumstances, and therefore not an abuse of discretion, for the district court to construe the motion as seeking an extension of time to reply to the court's show-cause order and to deny it on the basis that the court had ordered only the warden to respond to the show-cause order.

Pittman next argues that the district court's summary denial of his motion for reconsideration of his motion for an extension of time violates the spirit of Federal

27

Rule of Civil Procedure 6(b)(1), which governs extensions of time "for good cause." He argues that having a broken writing hand constituted good cause. We need not reach that issue, however, because in neither motion did Pittman specify how long of an extension he required. He therefore failed to comply with the district court's local rule requiring a motion for an extension of time to state, among other things, "the length of the requested extension," D.C.COLO.LCivR 6.1(b). We therefore see no abuse of discretion in the district court's denial of the motion for reconsideration, even though the court gave no reason for doing so. *See Hill*, 393 F.3d at 1116 ("[A] failure of explanation is harmless where the record reveals the apparent reason or reasons justifying the denial.").

### 3. Equitable tolling

Pittman claims the district court should have granted his motion for leave to file a motion for equitable tolling because, in denying his motion for an extension of time to file his reply, "the court refused to allow [him] an opportunity to file a rebuttal response," thereby leading him to believe that filing his § 2241 application was "all that would be required by him." Aplt. Opening Br. at 11 (capitalization omitted). In support, Pittman relies on the Supreme Court's teaching that equitable tolling may be appropriate "where the court has led the plaintiff to believe that she had done everything required of her." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam). We disagree. The district court's rationale for denying Pittman's motion for an extension of time to file his reply, discussed above, does not suggest the court would have refused either a timely reply or a

28

motion for an extension of time to reply filed before Pittman's response was due. Pittman filed neither. We therefore see no abuse of discretion in the district court's summary denial of Pittman's motion for leave to file a motion for equitable tolling. *See Hill*, 393 F.3d at 1116.

### 4. Merits

Having concluded the district court did not abuse its discretion in denying Pittman's various efforts to gain additional time to file his reply, we now turn to Pittman's arguments on the merits. "When reviewing the denial of a habeas petition under § 2241, we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous." *al-Marri v. Davis*, 714 F.3d 1183, 1186 (10th Cir. 2013).

We first consider Pittman's challenge to the district court's determinations that the warden had presented "far more than the requisite 'some evidence'" that Pittman was present at the hearing, R. at 231, and that Pittman had presented no documentary evidence to support his allegation that the SHU staff visitor log book did not show DHO Rich had entered the SHU on the date of the hearing. Pittman argues that because Habeas Rule 2(c) only requires a habeas applicant to "state the facts supporting each ground [for relief]," the applicant is not required to present documentary evidence, but only to "state facts that point to a real possibility of constitutional error," *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (internal quotation marks omitted). But 28 U.S.C. § 2248 provides that allegations set out in "an answer to an order to show cause in a habeas corpus proceeding, *if not traversed*, shall be

accepted as true except to the extent that the judge finds from the evidence that they are not true." § 2248 (emphasis added). Although Pittman submitted the staff visitor log book with his reply, the district court did not consider it because the court found, correctly, that Pittman's reply was untimely. Pittman points to nothing else that might "traverse[]" the allegations in the warden's response to the show-cause order regarding whether the DHO held a hearing at which Pittman was present. Therefore, § 2248 permitted the district court to "accept as true" the warden's allegations unless the court found "from the evidence" they were "not true." § 2248. The district court effectively accepted the warden's allegations by finding no reason to disbelieve DHO Rich's testimony that Pittman was present for the entire hearing and the supporting documentary evidence the warden had submitted.

Regarding his waiver of a staff representative and witnesses, Pittman argues the district court applied a too lenient, "some evidence" standard when it stated there was "unquestionably 'some evidence' to support DHO Rich's conclusion." R. at 233. The court drew this standard from *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), where the Supreme Court held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by *some evidence* in the record," *id.* at 454 (emphasis added) (citation and internal quotation marks omitted). Pittman claims the district court was instead required to assess whether procedural due process was satisfied by a preponderance of the evidence.

30

We need not decide which standard applies because the district court's reference to "some evidence" bears no discernable relationship to the court's analysis of the waiver issue. At the conclusion of that analysis, the court said there was "'some evidence' to support *DHO Rich's conclusion*." R. at 233 (emphasis added). But DHO Rich expressed no "conclusion" regarding the waiver's validity; he merely provided factual testimony. The "some evidence" standard would have clearly applied to an analysis of DHO Rich's determination that Pittman had committed the charged violation. Pittman, however, did not contest the result of the hearing, so the court never performed such an analysis. Therefore, the reference to "some evidence" at the conclusion of the court's waiver analysis is at most a misstatement. At the very least, the reference does not show the district court erred in crediting the warden's evidence or in determining that the evidence refuted Pittman's conclusory assertions regarding his waiver.

We discern one additional merits argument in Pittman's opening brief. He suggests the allegations in his § 2241 application, which he signed under penalty of perjury, squarely contradicted the warden's evidence concerning the fact of the hearing and would have warranted a judgment in his favor after an evidentiary hearing. Aplt. Opening Br. at 3. We construe this as an argument that the district court should have held an evidentiary hearing, which, in his § 2241 application, Pittman suggested was necessary. But "[c]onclusory allegations will not suffice to warrant a hearing," *Andrews v. Shulsen*, 802 F.2d 1256, 1266 (10th Cir. 1986), and the allegations in Pittman's § 2241 application concerning whether a hearing

31

occurred were conclusory allegations that Pittman attempted to bolster by declaring them in a sworn pleading. Furthermore, Pittman never indicated what testimony at an evidentiary hearing would have provided. "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). We therefore reject his argument that the district court should have held an evidentiary hearing.

## IV. No. 18-1185

### A. Background

In March 2016, while housed at Coleman I, Pittman was issued an incident report alleging that he threatened another with bodily harm. The report stated that while a correctional officer was making rounds, Pittman stopped him and said, "you guys think you're safe but when I have my guys meet you in the parking lot you'll see! . . . "[Y]ou have down time you need to go on the computer and check out Heartless Felons Ohio, you'll see what we do! SIS don't have me here for no reason and as long as you have children you're valuable!" R. at 113. The report noted that "Heartless Felons Ohio is one of the largest organized threat groups in the state prison system. It's built on extortion and violence, using its might to commit slayings, robberies, home invasions, [and] drug and gun sales." *Id.* When the report was delivered to Pittman, he was advised of his right to remain silent and he requested no witnesses. The matter was referred to the UDC, where Pittman asserted

32

that he "did not threaten anyone," *id.* The UDC referred the matter to the DHO and recommended "appropriate sanctions." *Id.*

DHO Wendy White held a disciplinary hearing. According to the DHO's report, Pittman indicated he had no documentary evidence to present, but he requested witnesses and a staff representative. He denied the charge, stating it was "a lie" and the reporting officer knew it was "a lie." R. at 110 (capitalization omitted). "He asked me if I've done state time and I told him how things go down in the state joint vs. the federal system. I didn't stop him at my door. He stopped as I was talking to an inmate at my door and he asked me why I was so angry." *Id.* (capitalization omitted). Pittman's first witness was an inmate who stated that he saw the officer come to the door of Pittman's cell and "start on Mr. Pittman about writing [the officer] up," and that he did not hear Pittman make any threatening comments or say anything about the Heartless Felons Ohio. *Id.* (capitalization omitted). The second witness, yet another inmate, who was apparently housed in a cell across the hall from Pittman, stated that the officer was speaking to Pittman "respectfully" and "asked him if he had ever been to a certain prison before." *Id.* (capitalization omitted). "Pittman answered him and they were just talking respectfully. . . . I know he didn't say anything threatening." *Id.* (capitalization omitted). The staff representative, who spoke with Pittman prior to the hearing and was present for the entire hearing, made no comments on Pittman's behalf.

DHO White considered Pittman's denial but gave greater weight to the officer's account because he was clear and specific in his report, and Pittman's

33

credibility was suspect based on his history of the same charge and his "pattern of refusing to accept responsibility during DHO hearings," and because he had "much to lose by accepting responsibility or being truthful." R. at 111 (capitalization omitted). DHO White found the officer to be more credible because his observations were made in the line of duty, he had no reason to make false accusations against Pittman, and Pittman had not provided any evidence that the officer "conspired to falsely accuse [Pittman]." *Id.* (capitalization omitted). DHO White believed the first inmate witness did not hear the entire conversation because Pittman claimed he told the officer about the Heartless Felons Ohio as he was explaining the differences between the state and federal systems, but the witness stated he never heard anything said about that group. The DHO believed the other inmate witness thought it was a respectful conversation because voices were not raised, or because he did not hear the entire conversation due to poor acoustics in the SHU, which would make it hard for an inmate across the hall to hear everything Pittman was saying without raising his voice. Consequently, DHO White found Pittman guilty of "conduct which disrupts, . . . most like threatening another with bodily harm." *Id.* (capitalization omitted). She disallowed 27 days of GCT and imposed other sanctions.

In December 2017, while his first case was still pending before Magistrate Judge Varholak, Pittman filed a § 2241 application, asserting a Fifth Amendment due process violation and alleging DHO White was not an impartial decision-maker but misrepresented the testimony. Pittman alleged that at the hearing, he told the DHO the charging officer first asked him why he had filed a grievance against the officer,

34

next asked if Pittman had ever spent time in state prison, and then asked why Pittman was so angry. Pittman claimed he told the DHO he answered those questions by saying that he did not want to discuss the grievance he had filed against the officer, that he had spent time in state prison, and that if the officer called "exercising my grievance exhaustion being angry, I don't have an answer for your third question." R. at 7 (capitalization omitted). Pittman further alleged he told DHO White the officer had fabricated the charges in retaliation for filing the grievance less than a week earlier, but when he provided a copy of the grievance to the DHO, she said she would not need it because Pittman would not be able to prove the officer fabricated the charge due to the nature of the grievance.

Pittman also alleged that his second inmate witness made it clear he observed the entire encounter and, contrary to the DHO's account of that testimony, the witness said "that the charging officer's tone of voice was hostile," R. at 9 (capitalization omitted). Pittman asserted the DHO did not question either witness and excused them without allowing Pittman's staff representative to question them, and she formed her opinion that his first inmate witness did not hear the entire conversation without affording the witness a chance to testify about such an opinion. Pittman further denied ever stating to the DHO that he discussed with the charging officer the differences between the state and federal systems or that he told the charging officer to look up the Heartless Felon gang. Pittman faulted the DHO for saying "voices were not raised" because she was not present. R. at 12 (internal quotation marks omitted).

35

Magistrate Judge Gallagher ordered the warden to show cause why the § 2241 application should not be granted. He further ordered "that within twenty-one days of [the warden's] answer to the show cause order [Pittman] may file a reply." R. at 87. The same day, Magistrate Judge Gallagher entered an order drawing the case to Judge Arguello and Magistrate Judge Tafoya.

Pittman then filed the same cut-and-paste motion he filed in two of the other cases discussed above, requesting an indeterminate extension of time to file a reply "in Rebuttal to Respondent's Order to Show Cause" due to his hand injury. R. at 88. The district court denied that motion, stating, as it did in the other two cases, that the "Order to Show Cause applies to Respondent only." R. at 90.

The warden filed his response to the § 2241 application on March 19, 2018. Pittman then filed two motions identical to motions he filed in two of his other cases: a motion for leave to file a supplemental pleading, arguing that the case should be assigned to Magistrate Judge Varholak, and a motion asking the court to reconsider its denial of his motion for an extension of time to reply to the warden's answer. While those motions were pending, Pittman filed his reply to the warden's response on April 12, 2018, which was 24 days after the response was filed and therefore beyond the 21-day court-set deadline.

Soon thereafter the district court denied Pittman's § 2241 application and his pending motions for leave to file a supplemental pleading and for reconsideration of an extension of time to file a reply. The district court declined to consider the reply Pittman filed because the court found it to be untimely. On the merits, the court

36

construed Pittman's lone due-process claim as asserting that DHO White discounted the testimony of Pittman's witnesses and introduced her own speculation. The court concluded this did not violate *Wolff*'s requirement that a prisoner "should be allowed to call witnesses and present documentary evidence in his defense," 418 U.S. at 566. The court found it undisputed that DHO White received testimony from Pittman's witnesses and concluded that *Wolff* did not require DHO White "to credit all testimony received." R. at 152. The court further determined that "some evidence" supported DHO White's assessment of the witnesses' testimony because she clearly explained why she did not credit their testimony—it "could not be reconciled with [Pittman's] own admissions and with the physical space in which they allegedly overheard the incident." *Id.* The court noted Pittman had not alleged how DHO White erred in assessing "the witnesses' testimony" or "why her assumptions were flawed." *Id.* The court's ultimate conclusion was that the record refuted Pittman's "conclusory assertion that he was denied . . . his due process rights at the hearing." R. at 152–53.

## B. Discussion

### 1. Motion regarding transfer of case

We first address Pittman's challenge to the district court's denial of his motion for leave to file a supplemental pleading in which he argued that his case should be

assigned to Magistrate Judge Varholak.[11]  That motion and the proposed

supplemental pleading were identical to those he filed in the case underlying appeal

No. 18-1178, and as in that case, the district court summarily denied the motion.

Furthermore, the substance of his appellate challenge to the denial of that motion is

materially identical to the argument he raised in appeal No. 18-1178.  We therefore

reject his challenge for the substantially the same reasons set forth in our discussion

in No. 18-1178 and for the additional reason that the main thrust of Pittman's

argument for assignment to Magistrate Judge Varholak—that he was familiar with

the warden's alleged effort to falsely claim Pittman had waived his rights to a staff

representative and witnesses—is absent from this case, where Pittman *was*

represented by a staff member *and* presented witnesses.

## 2. Motions for extension of time and to reconsider

We next consider Pittman's challenge to the district court's orders denying his

motion for an extension of time to file a reply and his motion for reconsideration of

that denial.  Those motions and the court's orders denying them are materially

---

[11] Although Pittman states the district court struck this motion, the district court denied it.  *See* R. at 153.  ("FURTHER ORDERED that Applicant's Request for Leave to File Supplemental Pleading (Doc. # 15) is DENIED.").  Pittman's misstatement is apparently based on his confusion of this motion with the motions objecting to the case-assignment orders he filed in two of the other cases presently under our consideration, both of which the district court struck.  He did not file such a motion in this case.  He also argues the district court's denial of his motion for leave to file a supplemental pleading was an abuse of the court's discretion to allow supplemental pleadings under Federal Rule of Civil Procedure 15(d).  But because he did not invoke Rule 15(d) in that motion, we decline to consider it.  *See Daigle*, 972 F.2d at 1539 ("As a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question.").

identical to those filed in the case underlying appeal No. 18-1180. Likewise, the substance of his appellate challenge to the denials of those motions is materially identical to the argument he raised in appeal No. 18-1180. We therefore reject his challenge for the same reasons set forth in our discussion in No. 18-1180 and for the additional reason that his motion regarding the supplemental pleading and his motion for reconsideration totaled eight neatly handwritten pages and were filed on March 30, 2018, almost two weeks prior to the court-set deadline for his optional reply (which itself was only eleven neatly handwritten pages), thus undermining his contention that he needed more time to file his reply due to continued difficulty writing.[12]

### 3. Merits

As noted above, in reviewing the denial of a § 2241 application, "we review the district court's legal conclusions de novo and accept its factual findings unless clearly erroneous." *al-Marri*, 714 F.3d at 1186. "[T]he requirements of due process are satisfied if some evidence supports the decision by the [DHO] to revoke good time credits," *Hill*, 472 U.S. at 455, and if "the decisionmaker [is] impartial," *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004). Importantly, determining whether some evidence supports the DHO's decision "does not require examination of the entire record, independent assessment of the credibility of witnesses, or

---

[12] Pittman also argues the district court erred in denying his motion for equitable tolling, but he did not file such a motion in this case or raise an argument for equitable tolling in any other filing. We therefore do not address his argument on this point.

weighing of the evidence. Instead, the relevant question is whether there is *any evidence* in the record that could support the [DHO's] conclusion." *Hill*, 472 U.S. at 455–56 (emphasis added).

Pittman takes issue with the district court's view that he failed to allege how the DHO erred in assessing the witnesses' testimony or why her assumptions were wrong. He points to the allegation in his § 2241 application that DHO White misrepresented the second inmate witness's testimony about the officer's tone of voice (i.e., respectful vs. hostile). He also asserts the DHO misrepresented his own statement at the hearing. We see no reversible error because "[t]here was some evidence supporting the [DHO's] finding, and it is not our job to address the validity of that evidence." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

Pittman complains he was never placed on notice that his witnesses would have to explain why they were able to hear the conversation, and he faults the DHO for not asking any questions of the witnesses. He argues the DHO had no basis to make findings regarding what the witnesses were able to hear without asking them about it, and that her determination about what they were or were not able to hear is evidence of bias. But Pittman was given the opportunity to present his witnesses, and our role "is limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary [decision.]" *Id.*; *see also Taylor v. Wallace*, 931 F.2d 698, 701 (10th Cir. 1991) ("Wolff does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings."). Furthermore, the DHO made factual and credibility findings based

40

on the witnesses' testimony and, as she explained in her sworn declaration submitted

with the warden's response, her experience with the prison's acoustic environment.

Those are tasks for a factfinder. *See Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105,

1112 (10th Cir. 2005) ("One of the primary roles of the factfinder is to assess

credibility in deciding how to view the evidence."). We therefore reject Pittman's

contention that DHO White was biased. *See Tonkovich v. Kan. Bd. of Regents*,

159 F.3d 504, 518 (10th Cir. 1998) ("[B]ecause honesty and integrity are presumed

on the part of a tribunal, there must be some substantial countervailing reason to

conclude that a decisionmaker is actually biased with respect to factual issues being

adjudicated." (internal quotation marks omitted)).

Finally, Pittman suggests the district court should have held an evidentiary

hearing. But Pittman never moved for an evidentiary hearing, and unlike the case

underlying appeal No. 18-1180, he never suggested in any of his timely filings that

an evidentiary hearing was necessary.[13] He has therefore forfeited his argument that

the court should have held one. *See Fairchild v. Workman*, 579 F.3d 1134, 1144

(10th Cir. 2009) (explaining that a § 2254 movant "is required to properly request an

---

[13] In his reply to the warden's response to the show-cause order, Pittman suggested an evidentiary hearing was necessary. The reply, however, was untimely, and the district court properly disregarded it.

evidentiary hearing in the district court, because we ordinarily do not decide issues raised for the first time on appeal").[14]

## V.     Conclusion

We affirm the district court's judgments in Nos. 18-1178, 18-1180, and 18-1185, and we affirm the district court's order striking Pittman's Rule 60(b)(1) motion in No. 18-1214.  In No. 18-1178, we grant Pittman's application to proceed on appeal without prepayment of costs or fees, and we remind Pittman of his obligation to pay the full amount of those costs and fees.  *See* 28 U.S.C. § 1915(a) (excusing only *prepayment* of costs and fees).

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[14] Even if we considered the argument preserved, Pittman only said he "would be able to present evidence . . . that would clearly expose" the DHO's bias.  R. at 140 (capitalization omitted).  That is insufficient to merit an evidentiary hearing.  *See Cervini*, 379 F.3d at 994 ("District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim.").